# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| SHNYAR ANWAR HASSAN | |
| Plaintiff, | |
| v. | Civil Action No. 1:22-cv-1288 |
| MASROUR BARZANI | |
| Defendant. | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT
## PURSUANT TO FEDERAL RULES 12(b)(1), (12(b)(2), 12(b)(6), and 12(b)(7)

**Benjamin G. Chew** (VSB # 29113)
Email: bchew@brownrudnick.com
Tel.: (202) 536-1700
BROWN RUDNICK LLP
601 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005

*Counsel for Defendant, Prime Minister Masrour Barzani*

**David G. Barger** (VSB # 21652)
Email: bargerd@gtlaw.com
Tel.: (703) 749-1300; Fax: (703) 749-1301
GREENBERG TRAURIG LLP
1750 Tysons Boulevard, Suite 1000
McLean, VA 22102

**Robert P. Charrow:** charrowr@gtlaw.com *
**Dominic E. Draye:** drayed@gtlaw.com *
**Juliana M. Laurello:** laurelloj@gtlaw.com *
**Joe R. Reeder:** reederj@gtlaw.com *
Tel: (202) 331-3100; Fax: (202) 261-0164
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037

*Counsel for Defendant, Prime Minister Masrour Barzani*

*pro hac vice* motion forthcoming.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION & SUMMARY OF ARGUMENT ............................................. 1

ALLEGATIONS ....................................................................................................... 4

ARGUMENTS .......................................................................................................... 7

I.    **The Complaint Does Not Invoke This Court's *In Personam* Jurisdiction and Should Be Dismissed Under Rule 12(b)(2)** ............................................................................... 7

     A.    Plaintiff Does Not Satisfy Virginia's Long-Arm Statute .............................. 8

     B.    Plaintiff Has Failed to Plead that the Prime Minister Has Minimum Contacts with Virginia ................................................................................................. 9

          1.    Plaintiff Acknowledges that This Court Lacks "General Jurisdiction" Over the Prime Minister ................................................................................... 9

          2.    The Facts Pleaded Do Not Support "Specific Jurisdiction" ................. 10

II.    **The Complaint Does Not Invoke this Court's Subject Matter Jurisdiction and Should Be Dismissed Under Rule 12(b)(1)** ................................................................................. 12

     A.    The Foreign Sovereign Immunities Act Forecloses This Suit ................... 12

          1.    Neither Artful Nor Conclusory Pleadings Can Circumvent the FSIA ............... 13

          2.    No Exception to the FSIA Applies ......................................................... 15

              a.    The Tort Exception Does Not Apply to Defamation or Any Tort Arising Out of a Claim for Defamation ................................................................. 16

              b.    The Tort Exception Also Does Not Apply Because All of the Alleged Acts Occurred in Kurdistan ........................................................................... 17

     B.    The Prime Minister is Immune From Suit For Defamation ...................... 17

          1.    The Prime Minister Enjoys Absolute Immunity from Defamation Suits under the *Barr v. Matteo* doctrine ........................................................................ 17

          2.    This Suit is Subject to Common Law Sovereign Immunity and is Not Justiciable ................................................................................................. 18

i

       3.    This Suit is Subject to The Act of State Doctrine and is Not Justiciable .......... 19

  C.   Plaintiff Lacks Article III Standing to Maintain A Claim Based on Alleged Fear of Attacks by Hypothetical Religious Extremists .......................................................... 19

**III.   The Complaint, Having Failed to Join the KRG as a Required Party, Should Be Dismissed under Rule 12(b)(7) ...................................................................................... 20**

**IV.   Plaintiff Has Failed to Plead Adequately a Claim for Defamation, or Any Tort Based on the Same Operative Facts within the Meaning of Rule 12(b)(6) ............................ 22**

  A.   Plaintiff Has Failed to Plead Defamation Against Plaintiff as a Public Figure ......... 23

       1.    Plaintiff, as a Public Political Figure, Fails to Plead "Actual Malice," as Required by *New York Times v. Sullivan* ......................................................... 23

           a.   Plaintiff, as a Public Advocate and Media Personality, Is a Public Figure 24
           b.   Plaintiff Nowhere Alleges Actual Malice .................................................. 25

  B.   Plaintiff May Not Circumvent Constitutional First Amendment Barriers By Pleading Other Torts ........................................................................................................ 26

       1.    There Is No Such Tort As Assault Through Words or Stalking by Speech ...... 27

       2.    Plaintiff Has Failed to State a Claim for Intentional Infliction of Emotional Distress .......................................................................................................... 28

**CONCLUSION ....................................................................................................... 30**

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*,
    293 F.3d 707 (4th Cir. 2002) ..........................................................................3, 11, 12

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989)...........................................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................13, 15, 29

*Barr v. Matteo*,
    355 U.S. 171 (1957).........................................................................................3, 17

*Beck v. McDonald*,
    848 F.3d 262, 272 (4th Cir. 2017) .....................................................................20

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................13, 15, 29

*Bergaust v. Flaherty*,
    57 Va. App. 423 (Va. Ct. App. 2011) ...................................................................9

*Buckley v. Am. Const. Law Found., Inc.*,
    525 U.S. 182 (1999)...........................................................................................23

*Butters v. Vance Intern., Inc.*,
    225 F.3d 462, 466 (4th Cir. 2000) .....................................................................17

*Carney v. Adams*,
    141 S. Ct. 493 (2020) ........................................................................................19

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398, 414 (2013)....................................................................................20

*Clark v. Brown*,
    861 F.2d 66 (4th Cir. 1988) .................................................................................5

*Clark v. Commonwealth*,
    54 Va. App. 120 (Va. Ct. App. 2009) .................................................................27

*Crane v. Carr*,
    814 F.2d 758 (D.C. Cir. 1987) .............................................................................9

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)................................................................................10

*De Simone v. VSL Pharms., Inc.*,
No. TDC-15-1356, 2017 U.S. Dist. LEXIS 22589 (D. Md. 2017)...........................9

*Dine Citizens Against Ruining Our Environment v. Bureau of Indian Affairs*,
932 F.3d 843 (9th Cir. 2019) ................................................................21

*Dist. of Columbia v. Trump*,
959 F.3d 126 (4th Cir. 2020) ................................................................3

*Doe 1 v.Buratai*,
318 F.Supp. 3d 218 (D.D.C. 2018).........................................................18

*Doe v. Federal Democratic Republic of Ethiopia*,
No. 16-7081 (D.C. Cir. March 14, 2017)..............................................3, 17

*Eckert Int'l, Inc. v. Gov't of the Sovereign Democratic Republic of Fiji*,
834 F. Supp. 167 (E.D. Va. 1993) (Ellis, J.)..........................................19

*El Hadad v. United Arab Emirates*,
216 F.3d 29, at 34-35 (D.C. Cir. 2000).................................................16

*ESAB Grp., Inc. v. Centricut, Inc.*,
126 F.3d 617 (4th Cir. 1997) ................................................................7

*Fairfax v. CBS Corp.*,
2 F.4th 286 (4th Cir. 2021) ................................................................26

*First American First, Inc. v. Nat'l Ass'n of Bank Women*,
802 F.2d 1511 (4th Cir. 1986) ................................................................8

*Fitzgerald v. Penthouse Int'l, Ltd.*,
691 F.2d 666 (4th Cir. 1982) ..........................................................24, 25

*Florida Audubon Soc'y v. Bentsen*,
94 F.3d 658 (D.C. Cir. 1996) (*en banc*)..............................................20

*Gensetix, Inc. v. Bd. of Regents*,
966 F.3d 1316 (Fed. Cir. 2020)............................................................21

*George v. Kay*,
632 F.2d 1103 (4th Cir. 1980) ............................................................17

*Gonzaga Univ. v. Doe*,
536 U.S. 273 (2002)................................................................28

iv

*Goodyear Dunlop Tires Operations v. Brown*,
    564 U.S. 915 (2011)........................................................................................10

*Hanks v. Wavy Broad. LLC*,
    No. 2:11-cv-439, 2012 U.S. Dist. LEXIS 15729 (E.D. Va. Feb. 8, 2012) ............................26

*Hatfill v. New York Times Co.*,
    427 F.3d 253, 255 (4th Cir. 2005) ........................................................................22

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)....................................................................................9, 10

*Hubby v. Historic Savannah Found., Inc.*,
    623 F. Supp. 637 (S.D. Ga. 1985).........................................................................5

*Islamic Republic v. Pahlavi*,
    94 A.D.2d 374 (N.Y. App. Div. 1983) ...................................................................1

*Jerez v. Republic of Cuba*,
    775 F.3d 419 (D.C. Cir. 2014) ...........................................................................17

*Johnson v. Equityexperts.Org, LLC*,
    No. 3:19-cv-243-JAG, 2020 U.S. Dist. LEXIS 171112, (E.D. Va. Sep. 17,
    2020) .................................................................................................27, 28

*Jordan v. Donahoe*,
    No. 3:12-cv-759-JAG, 2013 U.S. Dist. LEXIS 83471 (E.D. Va. June 13,
    2013) ......................................................................................................16

*Kanter v. Warner-Lambert Co.*,
    265 F.3d 853 (9th Cir. 2001) ............................................................................10

*Kickapoo Tribe of Indians v. Babbit*,
    43 F.3d 1491 (D.C. Cir. 1995)............................................................................21

*Kijonka v. Seitzinger*,
    363 F.3d 645 (7th Cir. 2004) ............................................................................27

*Knight v. Doe*,
    No. 1:10-cv-887, 2011 U.S. Dist. LEXIS 66238 (E.D. Va. June 21, 2011) ....................10, 11

*Leutwyler v. Off. of her Majesty Queen Rania Al Abdullah*,
    184 F. Supp. 2d 277 (S.D.N.Y 2001)....................................................................15

*Levine v. McLeskey*,
    881 F. Supp. 1030 (E.D.Va. 1995) ......................................................................29

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)......................................................................................20

*Mehta v. Maddox*,
   No. 1:16-cv-1616, 2017 U.S. Dist. LEXIS 79276 (E.D. Va. May 23, 2017) ...........................9

*Merheb v. Illinois State Toll Highway Authority*,
   267 F.3d 710 (7th Cir. 2001) .........................................................................27

*Michael v. Sentara Health Sys.*,
   939 F. Supp. 1220 (E.D. Va. 1996) ....................................................................28

*Ministry of Oil of the Republic of Iraq v. 1,032,212 Barrels of Crude Oil Aboard
   the United Kalavrvta*,
   No. G-14-249, 2015 U.S. Dist. LEXIS 1566 (S.D. Tex. Jan. 7, 2015)...................................15

*Mwani v. bin Laden*,
   417 F.3d 1 (D.C. Cir. 2005) ...........................................................................15

*Nat'l Review, Inc. v. Mann*,
   140 S. Ct. 344 (2019)..................................................................................23

*New York Times v. Sullivan*,
   376 U.S. 254 (1964)...............................................................................4, 22, 23

*Odhiambo v. Republic of Kenya*,
   930 F. Supp. 2d 17 (D.C. Cir 2013). ..................................................................18

*Palin v. N.Y. Times Co.*,
   940 F.3d 804 (2nd Cir. 2019)..........................................................................26

*Peanut Corp. of America v. Hollywood Brands*,
   696 F.2d 311 (4th Cir. 1982) .......................................................................7, 8

*Republic of Philippines v. Pimentel*,
   553 U.S. 851 (2008).............................................................................1, 4, 21, 22

*Reuber v. Food Chemical News, Inc.*,
   925 F.2d 703 (4th Cir. 1991) ....................................................................2, 24, 25

*Robertson v. Sea Pines Real Estate Cos.*,
   679 F.3d 278 (4th Cir. 2012) .........................................................................13

*Rush v. Savchuk*,
   444 U.S. 320, 328 (1980)..............................................................................10

*Russo v. White*,
   241 Va. 23, 400 S.E.2d 160 (1991).....................................................................29

*Samantar v. Yousuf*,
    560 U.S. 305 (2010)......................................................................14, 20, 21

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993)......................................................................15

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) .......................................................10

*Sibert v. Flint*,
    564 F. Supp. 1524 (D. Md. 1983) ................................................9

*St. John v. Fritch*,
    3:10-cv-042-RLY-WGH, 2012 U.S. Dist. LEXIS 102587  (S.D. Ind. July 24,
    2012) .............................................................................................16

*Supervalu, Inc. v. Johnson*,
    276 Va. 356 (2008) ......................................................................28

*United States v. Sryniawski*,
    48 F.4th 583, 588 (8th Cir. 2022) ...............................................24

*Verlinden B.V. v. Central Bank of Nigeria*,
    461 U.S. 480 (1983)......................................................................15

*Walden v. Fiore*,
    571 U.S. 277 (2014)......................................................................11

*West v. Multibanco Comermex, S.A*,
    807 F.2d 820 (9th Cir. 1987) .......................................................19

*Whitney v. California*,
    274 U.S. 357 (1927) .....................................................................23

*Willis v. Semmes, Bowen Semmes*,
    441 F.Supp. 1235 (E.D. Va. 1977) ..............................................8

*Womack v. Eldridge*,
    215 Va. 338, 210 S.E.2d 145 (1974)............................................29

*Young v. New Haven Advocate*,
    315 F.3d 256 (4th Cir. 2002) .......................................................12

*Zeran v. America Online, Inc.*,
    958 F. Supp. 1124 (E.D. Va. 1997) .............................................26

**Constitution, Statutes**

28 U.S.C. § 1330.............................................................................................3

28 U.S.C. §§ 1330, 1602 *et seq*.................................................................13

28 U.S.C. § 1604...............................................................................15

28 U.S.C. § 1605(a)(5)....................................................................3, 16

Due Process Clause.........................................................................7, 9

First Amendment .....................................................................23, 25, 26

Va. Code Ann. § 18.2-60.3....................................................................27

Va. Code Ann. § 18.2-113 (2013)...........................................................28

Va. Code § 8.01-328.1.....................................................................7, 8

Va. Code § 8.01-328.1(A)(4)..................................................................8

**Rules**

Fed. R. Civ. P. 4(k)(1)(A)......................................................................7

Fed. R. Civ. P. 8..............................................................................13

Fed. R. Civ. P. 12(b)...........................................................................7

Fed. R. Civ. P. 12(b)(1)..............................................................3, 12, 13

Fed. R. Civ. P. 12(b)(2)...............................................................2, 7, 12

Fed. R. Civ. P. 12(b)(6)...................................................................4, 22

Fed. R. Civ. P. 12(b)(7)...................................................................4, 20

Fed. R. Civ. P. 19.............................................................................20

Fed. R. Civ. P. 19(b)....................................................................21, 22

Fed. R. Civ. P. 19(a)(1)(B)...................................................................21

**Other Authorities**

Dana Taib Menmy, *A Kurdish-American activist filed defamation lawsuit against KRG's prime minister*, The New Arab (Dec. 13,2022) https://www.newarab.com/news/kurdish-woman-us-files-defamation-suit-against-krgs-pm ...................................................................7

*Iraqi forces, Kurdish Peshmerga retake northern village from IS fighters – sources*, Reuters (Dec. 6, 2021) https://www.reuters.com/world/middle-east/islamic-state-militants-take-over-village-northern-iraq-security-sources-say-2021-12-05/.................................................................................2

Jim Garamone, *Kurdish Peshmerga Continue Partnership to Fight ISIS*, U.S. Dep't of Def. (Sept. 27, 2022), https://www.defense.gov/News/News-Stories/Article/Article/3171097/dod-kurdish-peshmerga-continue-partnership-to-fight-isis/.................................................................................6

"Peywendi" Translation from Kurdish to English, Google Translate https://translate.google.com/?sl=auto&tl=en&text=peywendi&op=translate&hl=en (last visited Feb. 6, 2023)...............................................................1

RESTATEMENT (SECOND) OF TORTS § 29 (1979)..........................................................27

Robert Charrow & Laura M. Klaus, *The Short Book on Standing* (2015)....................19

U.S. Dep't of State, *Statement on Iran Attacks the Iraqi Kurdistan Region*, U.S. Embassy & Consulates in Iraq, (Nov. 14, 2022) https://iq.usembassy.gov/statement-on-iran-attacks-the-iraqi-kurdistan-region/ .....................2

Wayne R. LaFave, SUBSTANTIVE CRIMINAL LAW § 16.3(b) (2d ed. 2003)..................................27

## INTRODUCTION & SUMMARY OF ARGUMENT

Plaintiff, under the guise of a defamation suit against a sitting prime minister, asks this Court to wade into her longstanding and public political dispute with a foreign political party, foreign political leaders, and a foreign government—the Kurdistan Regional Government ("KRG"). Plaintiff's attempt to have this Court entertain political squabbles between dueling foreign political parties should be rejected, especially given that the press release purportedly triggering this defamation suit was published in the Middle East in Kurdish, all events at the heart of the complaint unfolded in the Middle East, and all of the governmental actors, including the Defendant Prime Minister, reside in the Middle East. While the Court may "exercise[] its discretion [to avoid] becoming embroiled in the internal politics of a foreign Nation," *Islamic Republic v. Pahlavi*, 94 A.D.2d 374, 382 (N.Y. App. Div. 1983) (Kupperman, J.P., concurring), other fundamental grounds warrant dismissal of the Complaint.[1] First, the Court lacks personal jurisdiction over Prime Minister Barzani, who resides in Erbil, Kurdistan. Second, the Court lacks subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA") and Article III. Third, the Federal Rules of Civil Procedure require joinder of the Kurdistan Regional Government under *Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008). Fourth, Plaintiff has not stated and cannot state a claim for relief under Virginia law.

Plaintiff inaccurately claims that the Office of the Prime Minister defamed her by using the word "relationship"[2] in a 194-word government press release in Kurdish, which, according to

---

[1]     Courts may exercise such discretion under the act of state doctrine or common law foreign sovereign immunity.

[2]     Google Translate defines the Kurdish word at issue, "peywendi," variously, to include "communication," "relationship," or "addiction." *See* "Peywendi" Translation from Kurdish to English, Google Translate https://translate.google.com/?sl=auto&tl=en&text=peywendi&op=translate&hl=en (last visited Feb. 10, 2023).

Plaintiff, is defamatory "in the Kurdish culture." *See* Complaint ("Cmpl.") at ¶ 56. The allegations here are even more convoluted than in a typical political case because Plaintiff is suing the Prime Minister in "his personal capacity," even though the 29-page Complaint is devoid of a single fact that the Prime Minister personally played any role in writing, editing, or issuing the government press release. This is not surprising, given that, at all times pertinent to this litigation, the preoccupied Prime Minister and KRG were riveted, thwarting ongoing attacks by ISIS and Iranian-backed militia.[3]

Plaintiff seeks to have it both ways. On the one hand, she falsely accuses the Defendant, Prime Minister Barzani, his family, and government of corruption in the Complaint, on social media, and in the press. Yet, when the government responds to her accusations, she takes umbrage at a single word in a press release that nowhere names her. In this context, this Circuit has concluded that she "has little right to cry foul." *Reuber v. Food Chemical News, Inc*., 925 F.2d 703, 711 (4th Cir. 1991).

In the end, such foreign intrigue is best sorted out by the voters in Kurdistan or its courts. This is hardly a political thicket that U.S. courts should enter. Fortunately, Article III and Rule 12(b) insulate the judiciary from that thicket.

First, Rule 12(b)(2) requires dismissal for want of *in personam* jurisdiction over the Prime Minister, who resides in Kurdistan. No link is pleaded between the conduct and the Commonwealth, other than a tortured allegation of injury, which is insufficient as a matter of

---

[3]        *See, e.g.*, *Iraqi forces, Kurdish Peshmerga retake northern village from IS fighters – sources*, Reuters (Dec. 6, 2021) https://www.reuters.com/world/middle-east/islamic-state-militants-take-over-village-northern-iraq-security-sources-say-2021-12-05/;  *see also*, U.S. Dep't of State, *Statement on Iran Attacks the Iraqi Kurdistan Region*, U.S. Embassy & Consulates in Iraq, (Nov. 14, 2022) https://iq.usembassy.gov/statement-on-iran-attacks-the-iraqi-kurdistan-region/ (condemning "Iran's continued missile and drone attacks against the Iraqi Kurdistan Region.").

law.  The law of this Circuit is clear: to establish *in personam* jurisdiction in an electronic defamation case, the challenged communication must be directed at the Commonwealth and not, as here, to a "worldwide audience."  Cmpl. at ¶ 58; *ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

Second, Rule 12(b)(1) requires dismissal for want of subject matter jurisdiction.  The Complaint expressly targets the Office of the Prime Minister, the entity that Plaintiff asserts issued the 194-word press release in the Kurdish language that contained a word she argues is "defamatory" in Kurdish culture.  Suits against the Kurdistan Regional Government, the Office of the Prime Minister, or even the Prime Minister in his official capacity (where, as here, the government is the real party in interest) may proceed only under 28 U.S.C. § 1330, and then, only if not barred by the FSIA.  But the FSIA bars suits for defamation and any torts arising out of defamation.  *See* 28 U.S.C. § 1605(a)(5).  It also bars other torts, unless the entire tort occurred in the United States.  *See Doe v. Federal Democratic Republic of Ethiopia*, 851 F.3d 7, 10 (D.C. Cir. 2017) ("'[T]he entire tort'—including not only the injury but also the act precipitating that injury—must occur in the United States.").

Further, Article III jurisdiction is absent for three reasons: (i) the Prime Minister is entitled to absolute immunity under the *Barr v. Matteo* doctrine, which bars courts from entertaining defamation suits against high-ranking government officials.  *See Dist. of Columbia v. Trump*, 959 F.3d 126, 143 (4th Cir. 2020) ("As with other threshold questions, absolute immunity precludes *all judicial inquiry*, not just liability.") (emphasis in original); (ii) the matter is not justiciable under common law foreign sovereign immunity or the act of state doctrine, which would force this Court to assess the propriety of a wholly domestic function of a foreign government, *i.e.*, communicating with its citizenry; and (iii) Plaintiff lacks standing to maintain

claims against Prime Minister Barzani that turn on the actions of others not before the Court, namely unknown and unknowable "religious extremists."  (Cmpl. at ¶ 4).

Third, the Complaint warrants dismissal under Rule 12(b)(7) and the *Philippines* joinder doctrine for failure to join a required party not subject to this Court's subject matter jurisdiction, namely, the KRG.  *See Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008).

Fourth, Rule 12(b)(6) requires dismissal for failure to state a cognizable claim for defamation, intentional infliction of emotional distress, stalking by press release, or assault by press release.  The latter two torts are neither recognized at common law nor in Virginia. Further, in this Circuit, plaintiffs cannot use intentional infliction of emotional distress to plead around a fatally defective defamation claim.  Plaintiff's defamation claim fails because Plaintiff acknowledges being a public figure, but does not allege actual malice, as required by *New York Times v. Sullivan,* 376 U.S. 254 (1964), let alone any specific facts minimally necessary to support a finding of "actual malice."

## ALLEGATIONS

Plaintiff Hassan is a self-styled Kurdish political "advocate" and spouse of a Kurdish opposition politician and "elected Member of Parliament in Iraq from 2018 to 2021," who was voted out of office. Cmpl. at ¶¶ 8, 34, 56.  The Defendant is the elected Prime Minister of the Kurdistan Regional Government and a member of the Kurdistan Democratic Party that Plaintiff politically opposes.  *See id*. at ¶¶ 9, 21.

"For some time, [both Plaintiff and her husband] have been critical of" the Prime Minister, his political party, and the currently elected government of the KRG.  *Id*. at ¶ 46. Plaintiff "us[es] her social media platform, providing interviews, and writing articles speaking out on these issues."  *Id.* at ¶ 47.

Of the sixty paragraphs miscast as "Factual Allegations" (*Id*. at ¶¶ 11-70), forty-one paragraphs "are essentially a political polemic," *Hubby v. Historic Savannah Found., Inc*., 623 F. Supp. 637, 638 (S.D. Ga. 1985), attacking the current elected government, its Prime Minister, his party, and even members of his family. *Id*. at ¶¶ 11-51. These forty-one paragraphs allege "charges and counter charges" of the type one would expect to see in a political forum. *Clark v. Brown*, 861 F.2d 66, 68 (4th Cir. 1988).

Paragraphs 52 to 64 allege that Plaintiff has been defamed. On December 7, 2021, an article critical of the KRG and its elected Prime Minister was published in *The American Prospect*. *See* Cmpl. at ¶¶ 37-43. Jumping into the fray, Plaintiff promptly "re-posted links to the story on Twitter and Facebook and translated the article into Kurdish[.]" Cmpl. at ¶ 54. The Complaint charges that the "Office of the Kurdistan Regional Government's Prime Minister," two days later, issued a press release in Kurdish denying the article's allegations. *Id*. at ¶ 56. The release, based on an English translation, also stated that

> it became evident that the reporter has a <u>relationship</u> with the wife of a former Iraqi-Kurdish member of Parliament, who is an American citizen. He is known for his behavior against the people of Kurdistan[.]"

*Id.* (emphasis supplied).

Neither Plaintiff nor her husband nor any particular reporter is named in the release. Plaintiff argues that the "Kurdish word ( پەیوەندی )," which someone translated as "'relationship,' when applied to a married woman and a man who is not her husband means in the Kurdish culture, and is understood by Kurdish speakers to mean, an 'adulterous affair' outside of marriage." *Id.* It should be noted that the Kurdish word has several meanings, including "communication." *See supra*, n.2.

Plaintiff alleges that the Prime Minister "knowingly published, or caused to be published, [the allegedly defamatory word] <u>to a worldwide audience</u> on multiple occasions beginning December 9, 2021 and continuing thereafter through and by the following means: (a) the Office of the Prime Minister; . . . [and] numerous social media accounts maintained by the KRG and KDP." *Id.* at ¶ 58 (emphasis supplied). Plaintiff presents no facts to support the conclusory allegation that the Prime Minister himself, as opposed to the Office of the Prime Minister, "knowingly published or caused to be published" the sentence at issue. Nor does Plaintiff present any fact even suggesting that the Prime Minister was aware of the press release. It is difficult to envision any prime minister personally issuing a press release, particularly one working in a veritable war zone; that is the job of press officers, not a prime minister.[4]

Plaintiff concedes, as she must, that she and her husband each had spoken with the reporter at issue. *See* Cmpl. at ¶ 36. As such, Plaintiff does not deny that she and her husband communicated with and had a relationship with the reporter, so the press release is true. Plaintiff further claims that the government press release "placed her in imminent danger of physical bodily harm" and, as a result, she "cannot safely visit her family in Kurdistan." Cmpl. at ¶¶ 68-

---

[4]    The KRG's Prime Minister's top priority is the KRG's military fight against ISIS, which continues to wreak terror, targeting "citizens of Iraq and other populations across the broader region." Jim Garamone, *Kurdish Peshmerga Continue Partnership to Fight ISIS,* U.S. Dep't of Defense (Sept. 27, 2022), <u>https://www.defense.gov/News/News-Stories/Article/Article/3171097/dod-kurdish-peshmerga-continue-partnership-to-fight-isis/</u> (announcing renewed U.S.-KRG MOU for "Defeat-ISIS" operations, and the U.S. government's "deep appreciation and respect for the tremendous sacrifices made by members of the peshmerga who gave their lives in the fight to defeat ISIS." Assistant Defense Secretary Celeste Wallander added, "[t]he United States is cognizant of the cost of victory to the peshmerga, and we are honored to be your partners — on and off the battlefield").

69. Inconsistently, she concedes that she and her husband visited Kurdistan in 2022, well after this press statement was released.  *See id*. at ¶ 64.[5]

Under either Article III or Rule 12(b), this Court should dismiss the Complaint.  There is simply no way to create a cognizable injury in the United States or to transform a press release from a foreign Prime Minister's Office into a personal missive by Defendant.

## ARGUMENTS

### I. The Complaint Does Not Invoke This Court's *In Personam* Jurisdiction and Should Be Dismissed Under Rule 12(b)(2)

Federal Rule of Civil Procedure 4(k)(1)(A) authorizes a federal court to exercise personal jurisdiction over a defendant in the manner provided by state law.  *ESAB Grp., Inc. v. Centricut, Inc*., 126 F.3d 617, 622 (4th Cir. 1997); *see* Va. Code § 8.01-328.1 (Virginia long-arm statute). Jurisdiction predicated on a long-arm statute entails a dual analysis: first, whether the statute establishes personal jurisdiction over a defendant; and second, whether that statutory assertion of personal jurisdiction satisfies the Due Process Clause of the U.S. Constitution.  *See Peanut Corp.*

---

[5]     First, Plaintiff's professed fear of an "honor killing" in Virginia is belied by the DoJ study she cites, which does not reference a single honor killing in Virginia or a single honor killing involving Kurds anywhere in the United States.  Second, her professed fear in the U.S. (*id*. at ¶ 69) is discredited by her very open social life, which she widely grandstands in social media, replete with videos and postings of her at highly public events (*e.g.*, Alexandria, Virginia July 4 rally; Loudon County political rally; multiple D.C. area Kurdish community gatherings). Trumpeting and republishing allegedly defamatory statements simply doesn't square with what she and her counsel have done by flacking her complaint to the press, re-broadcasting it in social media, and identifying herself in a November 30, 2022, press release as the otherwise anonymous woman in the KRG government press release.  *See* Dana Taib Menmy, *A Kurdish-American activist filed defamation lawsuit against KRG's prime minister*, The New Arab (Dec. 13, 2022)  https://www.newarab.com/news/kurdish-woman-us-files-defamation-suit-against-krgs-pm.

*of America v. Hollywood Brands*, 696 F.2d 311, 313 (4th Cir. 1982); Va. Code § 8.01-328.1.

Here, Plaintiff satisfies neither.

### A.    Plaintiff Does Not Satisfy Virginia's Long-Arm Statute

Under Virginia's long-arm statute, in relevant part,

> [a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's: . . [c]ausing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or <u>engages in any other persistent course of conduct</u>, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth[.]"

Va. Code § 8.01-328.1(A)(4) (emphasis supplied).

Plaintiff does not and cannot allege that the Prime Minister regularly does or solicits business in Virginia or derives substantial revenue from activities in Virginia. Accordingly, Plaintiff must rely solely on the "persistent course of conduct" prong of (A)(4), which "[a]t a minimum, [requires proof] that the defendant maintained some sort of ongoing interactions with the forum state." *Willis v. Semmes, Bowen Semmes*, 441 F.Supp. 1235, 1242 (E.D. Va. 1977), *cited with approval in First American First, Inc. v. Nat'l Ass'n. of Bank Women*, 802 F.2d 1511, 1514 (4th Cir. 1986). Nor has Plaintiff alleged that Prime Minister Barzani ever engaged in a "persistent course of conduct" in the Commonwealth, which is hardly surprising given that he is the Prime Minister of Kurdistan.

Owning property with others through some form of holding company, as alleged in the Complaint (*see* Cmpl. at ¶ 10), does not equate to conduct in Virginia, persistent or otherwise. Nor are episodic visits to the Commonwealth the stuff of persistency. Even frequent visits to the Commonwealth, which are not alleged, would require Plaintiff to assert that such visits are <u>not</u> being made in his official capacity as Prime Minister, but rather, in his individual capacity

because that is how Plaintiff purports to sue him in this case. *See Sibert v. Flint*, 564 F. Supp. 1524, 1529 (D. Md. 1983) (applying Maryland's long-arm statute which, like Virginia's, contains the same "persistent" prong: "[t]he acts of a corporate representative, transacting corporate business, are not a basis for the exercise of personal jurisdiction over the corporate representative in his individual capacity."); *see also, Crane v. Carr*, 814 F.2d 758, 761 (D.C. Cir. 1987); *also*, *De Simone v. VSL Pharms., Inc.*, No. TDC-15-1356, 2017 U.S. Dist. LEXIS 22589, *20-21 (D. Md. 2017) (applying the government contacts exception and finding no personal jurisdiction in Virginia based on plaintiff's contacts with the U.S. Patent & Trademark Office in Virginia).

**B.      Plaintiff Has Failed to Plead that the Prime Minister Has Minimum Contacts with Virginia**

Even if Plaintiff satisfied the Virginia long-arm statute, which she has not, the Due Process Clause must still be satisfied. *See Mehta v. Maddox*, No. 1:16-cv-1616, 2017 U.S. Dist. LEXIS 79276, at *2-3 (E.D. Va. May 23, 2017) (citing *In re Celotex Corp.*, 124 F.3d 619, 627-28 (4th Cir. 1997)) (internal citations omitted).[6]  For Due Process purposes, the Supreme Court recognizes two types of personal jurisdiction — "general" and "specific." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

**1.      Plaintiff Acknowledges that This Court Lacks "General Jurisdiction" Over the Prime Minister**

"General jurisdiction" permits a court to exercise jurisdiction over a defendant whose activities are so "continuous and systematic as to render them essentially at home in the forum

---

[6]      "The purpose of our 'long arm statute' is to assert jurisdiction, to the extent permissible under the Due Process Clause of the Constitution of the United States, over nonresidents who engage in some purposeful activity in Virginia." *Bergaust v. Flaherty*, 57 Va. App. 423, 429 (Va. Ct. App. 2011) (quoting *Danville Plywood Corp. v. Plain Fancy Kitchens, Inc.*, 218 Va. 533, 534, 238 S.E.2d 800, 802 (1977)).

State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 919 (2011)). This is an "exacting" standard. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop*, 564 U.S. at 924 (emphasis supplied). Individuals are domiciled where they make their "permanent home," *i.e.* where they reside "with the intention to remain or to which [they intend] to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

Plaintiff concedes that the Prime Minister "is not a citizen of, or domiciled in, Virginia." Cmpl. at ¶ 6. That ends the matter. *See also, Rush v. Savchuk,* 444 U.S. 320, 328 (1980) ("mere presence of property in a State does not establish a sufficient relationship between the owner of the property and the State to support the exercise of jurisdiction over an unrelated cause of action."). Thus, "general jurisdiction" does not exist here.

### 2.    The Facts Pleaded Do Not Support "Specific Jurisdiction"

To establish "specific jurisdiction," Plaintiff must plead and prove claims that "aris[e] out of or relat[e] to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 411 n.8. Plaintiff does not allege that the Prime Minister's office issued the release while he was in Virginia, nor even directed the release specifically into Virginia. Nor does Plaintiff allege the involvement of any property in Virginia. Instead, Plaintiff alleges that the allegedly defamatory statement was posted on the internet and was thus accessible worldwide, including in Virginia. That does not pass constitutional muster. "The mere act of placing information on the internet is insufficient to subject a person to personal jurisdiction in every State in which the information is accessed, or anyone who posted information on the Internet would be subject to personal

jurisdiction in every State." *Knight v. Doe*, No. 1:10-cv-887, 2011 U.S. Dist. LEXIS 66238, at *9 (E.D. Va. June 21, 2011) (citation to *ALS Scan* omitted). Moreover, "mere injury to a forum resident is not a sufficient connection to the forum." *Walden v. Fiore*, 571 U.S. 277, 278 (2014).

In the internet context, general does not exist over an out-of-state defendant <u>unless</u> that individual "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan, Inc.,* 293 F.3d at 714.

The Complaint nowhere alleges that the Prime Minister or his Office directed electronic activity into Virginia. To the contrary, the Complaint alleges the exact <u>opposite</u>, namely, that the government press release at issue was aimed at a "worldwide audience," which is the result one would expect by placing an item on the internet. Cmpl. at ¶ 58; *id*. at ¶ 53 (websites are accessible "in Virginia and elsewhere in the U.S."). This is precisely what occurred in *ALS Scan, Inc*., where the issue was whether a Georgia-based Internet Service Provider subjected itself to personal jurisdiction in Maryland by enabling a website owner to publish photographs on the internet, in violation of a Maryland corporation's copyrights. Finding no *in personam* jurisdiction, the court reaffirmed that advances in "technology cannot eviscerate the constitutional limits on a State's power to exercise jurisdiction over a defendant." 293 F.3d at 711. The Court went on to hold that "under the standard we adopt and apply today, specific jurisdiction in the Internet context may be based only on an out-of-state person's Internet activity <u>directed at Maryland</u> and causing injury that gives rise to a potential claim cognizable in Maryland." *Id*. at 714 (emphasis supplied). The Fourth Circuit concluded that the defendant "did not select or knowingly transmit infringing photographs specifically to Maryland with the

intent of engaging in business or any other transaction in Maryland." *Id.* at 714-15. Similarly, the Office of the Prime Minister here is not and could not credibly be accused of knowingly transmitting the press release specifically to Virginia with the intent of engaging in business or any other transaction in Virginia.

The result is the same under the more generic Fourth Circuit analysis that governs both electronic and non-electronic activities, which requires courts to consider: "(1) the extent to which the defendant purposefully avail[ed] itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and[,] (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc.*, 293 F.3d at 712 (alteration in original) (internal citations omitted); *see also, Young v. New Haven Advocate*, 315 F.3d 256, 258-59 (4th Cir. 2002) (finding that a Virginia court "cannot constitutionally exercise jurisdiction over [out of state newspaper] defendants because they did not manifest an intent to aim their websites or the posted articles at a Virginia audience.").

Here, the <u>only</u> allegations related to Virginia were ownership with others of a house and episodic visits to the Commonwealth – none of which gives rise to the claims in this suit.[7] Therefore, Plaintiff has failed to allege facts giving rise to "specific jurisdiction." *See generally, ALS Scan, Inc., supra* (analyzing jurisdiction in defamation cases involving the internet).

## II. The Complaint Does Not Invoke this Court's Subject Matter Jurisdiction and Should Be Dismissed Under Rule 12(b)(1)

### A. The Foreign Sovereign Immunities Act Forecloses This Suit

---

[7]     Plaintiff alleges three other torts, all dependent on her defamation claim, which likewise provide no relief from 12(b)(2): the first two (assault through language and stalking by press release) do not exist under Virginia's common law. Nor does the third (Intentional Infliction of Emotional Distress) provide a means of circumventing a fatally flawed defamation claim in the Fourth Circuit. Nor is any conduct related to these theoretical causes of action alleged to have occurred in this district.

Rule 12(b)(1) also requires dismissal for want of subject matter jurisdiction. The KRG is not a named party, yet this Complaint is based entirely on a communication from the KRG, which is immune from such suits under the FSIA. *See* 28 U.S.C. §§ 1330, 1602 *et seq*.

### 1.     Neither Artful Nor Conclusory Pleadings Can Circumvent the FSIA

To circumvent foreign sovereign immunity, Plaintiff inserts a conclusory allegation that the Prime Minister is being sued "in his personal capacity and for reasons that are unrelated to his position with the Kurdistan Regional Government." Cmpl. at ¶ 9. Plaintiff provides no factual basis for this jurisdictionally critical allegation. Indeed, if the KRG or Office of the Prime Minister were irrelevant to this suit, much of the Complaint would have to be stricken: "Prime Minister" is stated at least ten times in the Complaint; the KRG is cited eleven times; and the "Office of the Prime Minister" is mentioned four times. The Complaint further alleges that the communication at issue came from the Office of the Prime Minister, an agency of the KRG.

Rule 8 of the Federal Rules of Civil Procedure, as applied in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), requires a plaintiff to allege facts sufficient so that the allegations in the complaint are facially plausible. Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Thus, "'naked assertion[s]' devoid of 'further factual enhancement'" are inadequate. *Iqbal*, 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 557). *See Robertson v. Sea Pines Real Estate Cos*., 679 F.3d 278, 288 (4th Cir. 2012). The assertion here that this suit is against the Prime Minister in his personal capacity is precisely the kind of "formulaic" allegation that *Iqbal* and *Twombly* foreclose. The governmental source of the press release is FSIA-dispositive here, and Plaintiff cannot, and does not even attempt to, plead around it: the Complaint lacks even a single fact supporting the allegation that the Prime

Minister personally issued, approved, caused, or even laid eyes on the press release before it issued, let alone that any such action was done in his private capacity. The Complaint, as it must, concedes just the opposite: the press release was issued by the Kurdistan Regional Government, specifically, the "Office of the Prime Minister."

The Complaint is therefore substantively an action against the Office of the Prime Minister. The facts, as pleaded, cannot be read to bypass the FSIA, any more than plaintiffs can circumvent the FSIA with "artful pleading." *Samantar v. Yousuf*, 560 U.S. 305, 325 (2010). The result would be no different if the Prime Minister were sued in his "official capacity." "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (emphasis in original). The Complaint here explicitly details allegations against the KRG itself. Indeed, every action factually alleged in the Complaint was carried out by the KRG.

Plaintiff concedes that the statement at issue "was issued in the Kurdish language by the **Office of the Prime Minister of the KRG** (MASROUR's office)." Cmpl. at ¶ 55 (emphasis added). An English translation allegedly from a news service, reconfirms the "Office of the Prime Minister" as the source, a fact repeated at least three times in the statement. *Id.*

The action at issue — publishing or causing to be published a government press release through the "Office of the Prime Minister," a series of Kurdish news outlets, including the "official mouthpiece" (*id*. at ¶ 55) of the KDP (the governing political party), "numerous social media accounts maintained by the KRG and the KDP" (*id*. at ¶ 58), and "networks of accounts and botnets linked to the KDP" (*id.*) — cannot credibly be described as anything other than government acts. Suing the Prime Minister in his personal capacity for an official publication

issued through official channels disconnects truth from reality and is not "plausible" within the meaning of *Iqbal* and *Twombly*. In *Leutwyler v. Office of her Majesty Queen Rania Al Abdullah*, 184 F. Supp. 2d 277, 289 n.12 (S.D.N.Y 2001), the court held that an official publication aimed at protecting the Queen's public image cannot be alleged as "anything other than official." Yet that is precisely what Plaintiff alleges here. The sentence at issue is part of a government press release aimed at protecting the image of both the government and the Prime Minister by reiterating that a news report "is fabricated and is part of a counter-campaign against the reforms that the PM and his government have undertaken." Cmpl. at ¶ 56.

Plaintiff's claims here arise <u>exclusively</u> from an official government communication, transmitted through official government channels, aimed at defending the government and one of its two highest-ranking officials. The KRG, a political subdivision of the government of Iraq (*see Ministry of Oil of the Republic of Iraq v. 1,032,212 Barrels of Crude Oil Aboard the United Kalavrvta*, 2015 U.S. Dist. LEXIS 1566 (S.D. Tex. Jan. 7, 2015), is the real party in interest. The KRG's immunity from suit under the FSIA requires dismissal for lack of subject matter jurisdiction.

### 2. No Exception to the FSIA Applies

The FSIA is the <u>sole basis</u> on which a U.S. court can exercise jurisdiction over a foreign state, including a political subdivision of that state. *See Argentine Republic v. Amerada Hess Shipping Corp.*,488 U.S. 428, 439 (1989). The KRG, including its Office of the Prime Minister, is immune from the jurisdiction of U.S. courts unless one of the specifically enumerated exceptions to immunity set forth in the FSIA applies. *See* 28 U.S.C. § 1604; *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993); *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488-89 (1983). *See also, Mwani v. bin Laden*, 417 F.3d 1, 15 (D.C. Cir. 2005).

The sole exception to immunity relevant to this case is § 1605(a)(5), the tort exception. That exception is unavailable here for two independent reasons. First, the exception does not apply to defamation or any tort arising out of a claim for defamation. Second, to fall within the exception, the entire tort must occur within the United States. If any portion of the tort is committed abroad, the tort exception does not apply.

### a. The Tort Exception Does Not Apply to Defamation or Any Tort Arising Out of a Claim for Defamation

The FSIA's tort exception in Section 1605(a)(5) contains an important exclusion for defamation that provides that the tort exception

> shall not apply to—
> (A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused,[8] or
> (B) any claim <u>arising out</u> of malicious prosecution, abuse of process, <u>libel, slander</u>, misrepresentation, deceit, or interference with contract rights[.]

28 U.S.C. § 1605(a)(5) (emphasis supplied).

"'Defamation' is simply Virginia's term for libel and slander." *Jordan v. Donahoe*, No. 3:12-cv-759-JAG, 2013 U.S. Dist. LEXIS 83471, at *14 (E.D. Va. June 13, 2013)); *see also, El Hadad v. United Arab Emirates*, 216 F.3d 29, 35 (D.C. Cir. 2000) (referring to 28 U.SC. § 1605(a)(5)(B) as the FSIA's "defamation exception"). This is a suit for defamation (*see* Count III) and three other claims arising directly out of the alleged defamation. Count I, styled as assault by communication (*see* Cmpl. at ¶ 73), Count II, styled as stalking by publication (*see id.* at ¶ 80), and Count IV, intentional infliction of emotional distress (*see id.* at ¶ 93), all arise out of

---

[8] The tort exception does not apply to a press release which is, by definition, a discretionary function. *See St. John v. Fritch*, 3:10-cv-042-RLY-WGH, 2012 U.S. Dist. LEXIS 102587 at *29 (S.D. Ind. July 24, 2012) (issuing a government press release is a discretionary function).

the alleged defamation.  As such, the tort exception does not apply to any of the four counts, and therefore, the Complaint must be dismissed for want of jurisdiction.

> ### b. The Tort Exception Also Does Not Apply Because All of the Alleged Acts Occurred in Kurdistan

"The noncommercial-tort exception abrogates sovereign immunity for a tort occurring entirely in the United States. [Plaintiff] by contrast, alleges a transnational tort." *Doe v. Federal Republic of Ethiopia*, 851 F.3d 7 (D.C. Cir. 2017).  Where any element of a tort occurs in other nations, even though injury may occur in the United States, the tort exception does not apply: "[T]he entire tort—including not only the injury but also the act precipitating that injury—must occur in the United States." *Jerez v. Republic of Cuba*, 775 F.3d 419, 424 (D.C. Cir. 2014) (quotation omitted).

Here, each element of the alleged tort, except the purported injury, occurred in Kurdistan. Accordingly, the tort exception does not apply, and the Court lacks subject matter jurisdiction.

> ## B. The Prime Minister is Immune From Suit For Defamation

> ### 1. The Prime Minister Enjoys Absolute Immunity from Defamation Suits under the *Barr v. Matteo* doctrine

The Prime Minister, as a government official, enjoys absolute immunity from defamation suits under *Barr v. Matteo,* 360 U.S. 564 (1959).  According to this Circuit, "[i]n *Barr v. Matteo,* the acting director of the Office of Rent Stabilization, charged with libel, was allowed an absolute privilege defense even though the acts complained of were found to be only within the outer perimeter of his duties and despite allegations that he acted with malice."  *George v. Kay*, 632 F.2d 1103, 1105 (4th Cir. 1980) (internal citations omitted).  This Circuit has applied *Barr* to extend immunity to contractors of foreign sovereigns.  *See Butters v. Vance Intern., Inc.*, 225 F.3d 462, 466 (4th Cir. 2000).  If immunity applies to contractors of foreign sovereigns, it

certainly would apply to high-ranking officials of foreign sovereigns. Defendant is such an

official and acting within his duties.

### 2. This Suit is Subject to Common Law Sovereign Immunity and is Not Justiciable

Common law sovereign immunity applies when a defendant is a public official, acting in

his official capacity, such that exercising Article III jurisdiction would enforce a rule of law

against a foreign state. *See Doe 1 v. Buratai*, 318 F.Supp. 3d 218, 231 (D.D.C. 2018), *aff'd*, No.

187170, 2019 U.S. App. LEXIS 5096 (D.C. Cir. Feb. 15, 2019), and *aff'd*, 792 F. App'x 6 (D.C.

Cir. 2019). Plaintiff concedes here that the Prime Minister is a public official (*See* Cmpl. ¶ 9),

but styles this case as against the Prime Minister in his personal capacity, which determination is

a question of law. "[S]uits against officers in their personal capacities must pertain to private

action[s]—that is, to actions that exceed the scope of authority vested in that official so that the

official cannot be said to have acted on behalf of the state." *Doe I. v Buratai,* 318 F. Supp. 3d at

232 (internal citations omitted). Plaintiff has not alleged that the Prime Minister acted outside

his authority. To the contrary, alleging that the Prime Minister "caused" the press release to be

issued <u>by the government</u>, acknowledges that the action was official, not private. The final

requirement (*i.e.*, whether exercising jurisdiction would enforce a rule against a foreign state) is

met because Plaintiff's claims chill a foreign government's ability to communicate with its

citizens—a core governmental function. Further, even assuming this to be a suit against the

Prime Minister in his personal capacity, issuance of the release by an arm of the government has

the effect of ratifying the action and making it a government act. As such, the state would be

liable for damages. *See e.g., Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17, 35 (D.C. Cir

2013).

### 3. This Suit is Subject to The Act of State Doctrine and is Not Justiciable

The act of state doctrine is a "combination justiciability and abstention rule" designed to minimize the likelihood that federal courts will become embroiled in the domestic affairs of a foreign government. *West v. Multibanco Comermex, S.A*, 807 F.2d 820, 827 (9th Cir. 1987). As this Court has previously noted, it has two abiding characteristics: "First, the act undertaken by the foreign state must be public, and second, the act must be completed within the sovereign's territory." *Eckert Int'l, Inc. v. Gov't of the Sovereign Democratic Republic of Fiji*, 834 F. Supp. 167, 171 (E.D. Va. 1993) (Ellis, J.). Here, the act was public in both senses of that word—the issuance by a foreign government of a press statement aimed at its citizenry. Additionally, the act was completed within the sovereign territory of the KRG. As the Complaint makes clear, the release was distributed in Kurdish by entities either owned by the government in Kurdistan or by the governing political party, also in Kurdistan. There are few actions more firmly rooted in the concept of abstention than how a foreign government chooses to wordsmith its communications to its populace.

### C. Plaintiff Lacks Article III Standing to Maintain A Claim Based on Alleged Fear of Attacks by Hypothetical Religious Extremists

Article III standing is required for each claim and each remedy.[9] Plaintiff lacks Article III standing to maintain any action or a portion of any action for fears of attack by hypothetical religious extremists. That asserted injury falls short of the jurisdictional requirement of "concrete and particularized" injury that is "fairly traceable" to the defendant's conduct and redressable by a judgment against him. *Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (quotation omitted).

---

[9] *See* Robert Charrow and Laura M. Klaus, The Short Book on Standing 9-15 (2015) (summarizing cases).

The absence of a non-speculative, concrete injury affects all of Plaintiff's claims. In *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013), the Court concluded that plaintiffs lacked standing for injury based on a fear that others would place them under surveillance. "We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors." *Id.* The Court reiterated that there must be "substantial risk" that the harm will occur." *Id. See also, Beck v. McDonald*, 848 F.3d 262, 272 (4th Cir. 2017) ("We also reject the Plaintiffs' claim that 'emotional upset' and 'fear [of] identity theft and financial fraud' resulting from the data breaches are 'adverse effects' sufficient to confer Article III standing."). Plaintiff here is no different from plaintiffs in *Clapper* or *Beck*. "Fears of attack by unidentified religious extremists" is speculative at best and involves drastic action by unknowable parties, none of whom is before this Court or even identifiable by Plaintiff. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Florida Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663-64 (D.C. Cir. 1996) (*en banc*) ("Causation or 'traceability,' examines whether it is substantially probable that the challenged acts of defendant, not some absent third party, will cause the particularized injury of the plaintiff."). In short, Plaintiff lacks standing to pursue any of her claims since all of them incorporate the element of fear of attack by unknown, conjectural third parties. *See* Cmpl. ¶¶ 5, 68-69, 74, 83, 90, 95.

## III.  The Complaint, Having Failed to Join the KRG as a Required Party, Should Be Dismissed under Rule 12(b)(7)

Even were the Court to find that the KRG is not the real party in interest, it should still dismiss the case under Rule 12(b)(7) for failure to join the KRG under Rule 19. The Supreme Court in *Samantar* concluded that

> when a plaintiff names only a foreign official, it may be the case that the foreign state itself, its political subdivision, or an agency or instrumentality is a required party, because that party has 'an interest relating to the subject of the action and 'disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect

the interest.' Fed. Rule Civ. Proc. 19(a)(1)(B).  If this is the case, and the entity is immune from suit under the FSIA, the district court may have to dismiss the suit, regardless of whether the official is immune or not under the common law."

*Samantar,* 560 U.S at 324-25.  That is the case here.

Because the KRG is immune from suit under the FSIA, joinder is not feasible.  Thus, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).  That inquiry centers on four factors: "(1) the extent to which a judgment rendered might prejudice the missing required party or the existing parties; (2) the extent to which any prejudice could be lessened or avoided; (3) whether a judgment rendered in the required party's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder."  *Gensetix, Inc. v. Bd. of Regents*, 966 F.3d 1316, 1325 (Fed. Cir. 2020).  Each of these factors supports dismissal in this case.

In *Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008), the Court gave dispositive weight to the first factor, concluding that "where sovereign immunity is asserted and the claims of the sovereign are not frivolous, dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign."  *Id*. at 867.  Before *Philippines*, at least two courts of appeals, accorded decisive weight to the first factor where sovereign immunity was involved.  *See Kickapoo Tribe of Indians v. Babbit*, 43 F.3d 1491, 1496 (D.C. Cir. 1995) (sovereign immunity of the State of Kansas); *Dine Citizens Against Ruining Our Environment v. Bureau of Indian Affairs*, 932 F.3d 843, 857 (9th Cir. 2019) (quoting *White v. University of California*, 765 F.3d 1010, 1028 (9th Cir. 2014) (tribal immunity).

The KRG is a required party because this action threatens to impair its interest in communicating with its people.  "Defamation actions by their very nature seek to punish past

speech and raise the specter of chilling future speech." *Hatfill v. New York Times Co.*, 427 F.3d 253, 255 (4th Cir. 2005). What is true for domestic news media is equally true for foreign sovereigns exposed to defamation liability in the United States. Remaining free from the threat of American civil litigation is in the KRG's—and every other sovereign's—interest.

The second Rule 19(b) factor — the extent to which any prejudice could be lessened or avoided by measures short of dismissal — also points toward dismissal. Any relief in this case would limit the KRG's ability to speak freely, so permitting the suit to go forward in any form would raise the same concerns requiring joinder. For the same reason, the third factor — whether a judgment rendered in the KRG's absence would be adequate — also requires dismissal. Adequacy speaks to the "public stake in resolving disputes by wholes, whenever possible," so as to avoid multiple litigation. *Philippines*, 553 U.S. at 870 (quoting *Provident Tradesmens Bank & Trust Co v. Patterson*, 390 U.S. 102, 111 (1968)). But without the KRG in this suit, Plaintiff can separately attempt to sue the KRG, just as the Prime Minister could seek indemnification from the KRG. In short, not litigating against the actual party in interest invites additional, piecemeal litigation.

Fourth, under the FSIA, parties are sometimes "left without a forum for definitive resolution of their claims. But that result is contemplated under the doctrine of sovereign immunity." *Philippines*, 553 U.S. at 852.

## IV. Plaintiff Has Failed to Plead Adequately a Claim for Defamation, or Any Tort Based on the Same Operative Facts within the Meaning of Rule 12(b)(6)

The Complaint concedes that Plaintiff for at least five years has actively and conspicuously engaged in the public arena by using media to oppose vociferously the governing party of the KRG and to participate in robust public political discourse. Yet as a public figure, Plaintiff fails to allege "actual malice" under *New York Times v. Sullivan* with the factual specificity minimally

required to support a defamation action. Indeed, the Complaint pleads no facts that support this constitutional requirement.  Two other alleged torts — assault by publication and stalking by publication — do not even exist at common law, and do not exist in Virginia.  For both, Plaintiff relies on Virginia's criminal anti-stalking statute.  But that statute provides no private right of action, and its existence does not create a tort.  Finally, Plaintiff also has failed to plead adequately intentional infliction of emotional distress, a tort disfavored in Virginia.

### A.      Plaintiff Has Failed to Plead Defamation Against Plaintiff as a Public Figure

Robust debate about issues of national importance is "core political speech" for which First Amendment protection is "at its zenith."  *Buckley v. Am. Const. Law Found., Inc.,* 525 U.S. 182, 186–87 (1999).  As a result, defamation suits between vying political factions are disfavored and severely limited.  The Court consistently recognizes that the preferred remedy for arguably errant discourse is "more speech, not enforced silence."  *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring); *Nat'l Review, Inc. v. Mann*, 140 S. Ct. 344, 346 (2019) ("The constitutional guarantee of freedom of expression serves many purposes, but its most important role is protection of robust and uninhibited debate on important political and social issues.").  If citizens cannot speak freely about the most important issues of the day without fear of suit, "real self-government is not possible."  *Id*. at 346-347.  Such coercion has prompted the Court to erect barriers against those who would seek to resolve political disagreements over the truthfulness of a statement at the courthouse, rather than the ballot box. Plaintiff has failed to surmount those barriers.  Specifically, Plaintiff, as a public figure, has failed to satisfy the discernably more rigorous pleading requirements of actual malice.

### 1.      Plaintiff, as a Public Political Figure, Fails to Plead "Actual Malice," as Required by *New York Times v. Sullivan*

"To recover compensatory damages for defamation, a public official or public figure must show actual malice, while a private figure may recover under a lower standard of culpability." *Reuber,* 925 F.2d at 708.

### a. Plaintiff, as a Public Advocate and Media Personality, Is a Public Figure

Plaintiff here at the very least is "a limited purpose public figure . . . because [s]he voluntarily injected [her]self into a public controversy in order to influence the resolution of the issues involved." *Id.* (quotation omitted). Plaintiff devotes an entire section of the Complaint to "public opposition" to the KRG's current leadership. *See* Cmpl. at ¶¶ 46-51. She further alleges that "[f]or some time, [Plaintiff] and [her husband] have been critical of" the Prime Minister's family. *Id.* at ¶ 46. Moreover, Plaintiff worked in the political arena with and for her husband— a member of parliament and candidate for re-election. *See United States v. Sryniawski*, 48 F.4th 583, 588 (8th Cir. 2022) (Spouses of candidates for public office openly involved in campaigns deemed public figures.).

Plaintiff also satisfies this Circuit's five-factor test for determining whether an individual is a public figure. *See Fitzgerald v. Penthouse Int'l, Ltd.*, 691 F.2d 666, 669-70 (4th Cir. 1982). The first of the *Fitzgerald* factors asks whether "the plaintiff had access to channels of effective communication." 691 F.2d at 668. Plaintiff satisfies this factor; she acknowledges that "[f]rom the United States, [Plaintiff] continued her work, using her social media platform, providing interviews, and writing articles speaking out on these issues . . . ." Cmpl. at ¶ 47.

Plaintiff satisfies both the second and third factors of the *Fitzgerald* analysis, which asks whether a plaintiff has voluntarily assumed a role of special prominence in a public controversy by attempting to influence the outcome of the controversy. *See* 691 F.2d at 668. The Complaint recounts Plaintiff's numerous efforts to promote specific political causes in Kurdistan. *See e.g.*,

Cmpl. at ¶ 3 ("public dissemination of information concerning [defendant's] transgressions"); *id.* at ¶ 8 (Plaintiff is "an advocate for women's rights in Kurdistan"); *see id.* at ¶¶ 46-51.

The fourth *Fitzgerald* factor analyzes whether "the controversy existed prior to the publication of the defamatory statements." 691 F.2d at 668. This requirement is easily met. The Complaint recounts, in detail, numerous media stories antedating December 9, 2021, about the Prime Minister's alleged transgressions, including Plaintiff's "translation and online posting of a December 2021 article by Kopplin in The American Prospect[,]" which predated the government press release by two days. *Id.* at ¶ 3.

The fifth and final *Fitzgerald* factor addresses whether "the plaintiff retained public figure status at the time of the alleged defamation." 691 F.2d at 668. The Complaint concedes that Plaintiff has engaged in these public political activities "before moving to the United States in 2017" and "continuing her work on these important issues from her residence in Virginia." *Id.* at ¶ 8. Thus, Plaintiff satisfies all five *Fitzgerald* factors and is therefore a public figure for First Amendment purposes.

Classifying Plaintiff as a public figure reaffirms "that the First Amendment is a two-way street. The Amendment assumes that hard blows may be swapped in the search for just outcomes." *Reuber,* 925 F.2d at 711. Plaintiff may challenge the government on various matters and has done so in the past, "but when [the government] respond[s] by challenging [her] credibility and the media reports these challenges, [she] has little right to cry foul." *Id.*

### b. Plaintiff Nowhere Alleges Actual Malice

As a public figure, Plaintiff must plead and then prove by clear and convincing evidence "actual malice," as *New York Times* and its progeny require. *See Reuber*, 925 F.2d at 712. But Plaintiff <u>nowhere</u> claims that the Prime Minister acted with "actual malice," or that he acted with

"reckless disregard" for the truth.  Neither phrase appears in the Complaint.  Nor would inserting those phrases with a conclusory flourish suffice here.

"To plead actual malice [a plaintiff] must plausibly allege that [defendant] aired the [statements] with a 'high degree of awareness'" that the statements were "likely" false.  *Fairfax v. CBS Corp.*, 2 F.4th 286, 293 (4th Cir. 2021).  Plaintiff has provided no factual basis whatsoever to conclude plausibly that the Prime Minister (or even those in his press office) had any, much less a high degree of, awareness that the statement at issue was false.  "[I]n cases where a defamation claim requires a showing of actual malice, courts in the Eastern District of Virginia have found that 'conclusory allegations regarding the [defendants'] intent . . . are insufficient to survive a motion to dismiss.'" *Hanks v. Wavy Broad. LLC*, Civil Action No. 2:11-cv-439, 2012 U.S. Dist. LEXIS 15729 at *35 (E.D. Va. Feb. 8, 2012) (citations omitted).  There is no allegation that the Prime Minister saw the press release prior to issuance or even knew of its contents.  Plaintiff concedes that she and her husband are political rivals of the Prime Minister and his "clan."  *Id*. at ¶¶ 11, 17, 34, 46 (clan), 46-51 (opposition).   However, the fact that Plaintiff and the Prime Minister are "political oppo[nents] alone does not constitute actual malice."  *Palin v. N.Y. Times Co*., 940 F.3d 804, 814 (2d Cir. 2019).

## B. Plaintiff May Not Circumvent Constitutional First Amendment Barriers By Pleading Other Torts

Plaintiff has added three other claims against the Prime Minister: (i) assault by publication; (ii) stalking by publication; and (iii) intentional infliction of emotional distress by publication.   Each of these claims is an "attempt to avoid the strictures of defamation law by disguising a defamation claim as another tort.  Courts uniformly reject such attempts." *Zeran v. America Online, Inc*., 958 F. Supp. 1124, 1133 n.19 (E.D. Va. 1997).

Two of the three claims—assault by publication and stalking by publication—have the additional defect that they do not exist at common law. Therefore, Plaintiff tries to mint new torts based on Virginia's anti-stalking criminal statute. However, in Virginia, a criminal statute does not support a private right of action unless the statute expressly so provides. *See Johnson v. Equityexperts.Org, LLC*, Civil Action No. 3:19-cv-243-JAG, 2020 U.S. Dist. LEXIS 171112 at *2 n.1 (E.D. Va. Sep. 17, 2020). The statute at issue here—Va. Code Ann. § 18.2-60.3—contains no authorization for a private right of action.

### 1. There Is No Such Tort As Assault Through Words or Stalking by Speech

Even if Plaintiff were permitted to repackage her defamation claim as other torts, she has failed to plead recognized torts. Plaintiff asserts that the allegedly defamatory press release somehow constitutes assault or violates Virginia's anti-stalking law. To the contrary, it is by now axiomatic that "words *alone* are never sufficient to constitute an assault." *Clark v. Commonwealth*, 54 Va. App. 120, 129 (Va. Ct. App. 2009). *See also, Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004) ("A merely verbal threat of indefinite action in the indefinite future is not an assault.").

Since the fourteenth century, assault has involved (1) a threatening gesture, or an otherwise innocent gesture made threatening by the accompanying words, that (2) creates a reasonable apprehension of an imminent battery. *See e.g., Merheb v. Illinois State Toll Highway Authority*, 267 F.3d 710, 714 (7th Cir. 2001), citing *I. de S. et ux. v. W. de S., Y.B. Liber Assisarum*, 22 Edw. 3, f. 99, pl. 60 (1348 or 1349); RESTATEMENT (SECOND) OF TORTS § 29 (1979); Wayne R. LaFave, SUBSTANTIVE CRIMINAL LAW § 16.3(b) (2d ed. 2003).

Virginia law is no different. Va. Code Ann. § 18.2-60-3 makes it a crime to

> on more than one occasion engage[] in conduct, either in person or through any
> other means, including by mail, telephone, or an electronically transmitted
> communication, directed at another person with the intent to place, or when he
> knows or reasonably should know that the conduct places that other person in
> reasonable fear of death, criminal sexual assault, or bodily injury to that other
> person or to that other person's family or household member . . . .

This anti-stalking criminal statute was never intended to salvage a deficient claim of defamation or assault. Even more basic under Virginia law, criminal statutes do not create private rights of action unless the statute so provides. *See Johnson v. Equityexperts.Org, LLC*, *supra*, at *2 n.1 ("The Court dismisses these state law claims (Counts Six and Seven) because the plaintiff brings them under state criminal statutes that do not create a private right of action. Va. Code Ann. § 18.2-113 (2003); *Id*. § 18.2-213.3 (2013)."). The anti-stalking statute referenced as the basis for two of Plaintiff's claims (claims (I) and (II)), provides no private right of action. This tracks federal law. *See e.g., Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002). It also requires the defendant to have engaged in repetitive conduct of the type associated with stalking. Here, the Prime Minister's Office is alleged to have caused a single press release to be issued to a "worldwide audience." Cmpl. at ¶ 87. Such action does not constitute repetitive conduct and hardly fits the mold of stalking.

### 2. Plaintiff Has Failed to State a Claim for Intentional Infliction of Emotional Distress

Plaintiff alleges as her final claim that one word, in one sentence in a government press release that never discloses her name, nevertheless qualifies as intentional infliction of emotional distress. "[T]he tort of intentional infliction of emotional distress is 'not favored' in the law . . ." *Supervalu, Inc. v. Johnson,* 276 Va. 356, 370 (2008); *see also*, *Michael v. Sentara Health Sys.*, 939 F. Supp. 1220, 1233 (E.D. Va. 1996) ("Because injury to the mind or emotions can be easily feigned, actions for intentional infliction of emotional distress are not favored in Virginia.").

As a result, Virginia law imposes a heightened pleading requirement on those seeking to prosecute an IIED claim. Among other things, a plaintiff must plead facts to support a showing of "severe emotional distress." *Womack v. Eldridge*, 215 Va. 338, 342, 210 S.E.2d 145 (1974). Here, all Plaintiff alleges is that she was "severely traumatized" (Cmpl. at ¶ 5), "experienced extreme mental suffering" (*id*. at ¶ 95) and suffered "physical manifestations of the extreme emotional distress," (*id*. at ¶ 96), but nowhere states the nature of physical manifestations or mental suffering or efforts to seek medical help for either. In many jurisdictions, and certainly in Virginia, conclusory pleading of this nature is fatal to an IIED claim. For example, in *Levine v. McLeskey*, 881 F. Supp. 1030, 1054 (E.D.Va. 1995), plaintiff in support of her IIED claim maintained that she lost weight, frequently cried, and seriously contemplated suicide. The Court held that these allegations "do not qualify as the type of emotional distress that will state a cause of action in Virginia." *Id*. The Court noted that the plaintiff did not interrupt her normal schedule, cease functioning normally, or seek medical treatment. *Id*. Similarly, in *Russo v. White*, 241 Va. 23, 25, 400 S.E.2d 160 (1991), the Virginia Supreme Court affirmed the dismissal of plaintiff's suit where she alleged severe emotional distress in the form of nervousness, sleeplessness, stress and its physical symptoms, withdrawal from activities, and lack of concentration. In *Levine* and *Russo*, the unsuccessful plaintiffs at least set out the bases for their claims of emotional distress; Plaintiff here leaves us with conclusory allegations devoid of any factual backing. *Iqbal,* 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 557 ("conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality"*).*

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss should be granted**.**


Dated:  February 10, 2023

    /s/ Benjamin G. Chew    
**Benjamin G. Chew** (VSB # 29113)
Email: bchew@brownrudnick.com
Tel.: (202) 536-1700
BROWN RUDNICK LLP
601 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005


*Counsel for Defendant, Prime Minister
Masrour Barzani*

Respectfully submitted,

    /s/ David G. Barger    
**David G. Barger** (VSB # 21652)
Email: bargerd@gtlaw.com
Tel.: (703) 749-1300; Fax: (703) 749-1301
GREENBERG TRAURIG LLP
1750 Tysons Boulevard, Suite 1000
McLean, VA 22102

**Robert P. Charrow:** charrowr@gtlaw.com
**Dominic E. Draye:** drayed@gtlaw.com
**Juliana M. Laurello:** laurelloj@gtlaw.com
**Joe R. Reeder:** reederj@gtlaw.com
Tel.: (202) 331-3100; Fax: (202) 261 0164
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037


*Counsel for Defendant, Prime Minister
Masrour Barzani*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of February 2023, I caused a copy of the foregoing to be filed electronically with the Clerk of Court using the CM/ECF system, which then sent a notice of filing (NEF) to all counsel of record:

Dated: February 10, 2023

_____/s/ David G. Barger_____
**David G. Barger** (VSB # 21652.)
Email: bargerd@gtlaw.com
Tel.: 703-749-1300; Fax: 703-749-1301
GREENBERG TRAURIG LLP
1750 Tysons Boulevard, Suite 1000
McLean, VA 22102

*Counsel for Defendant, Prime Minister
Masrour Barzani*