# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | |
|---|---|
| SHNYAR ANWAR HASSAN | |
| | |
| Plaintiff, | |
| | |
| v. | |
| | Civil Action No. 1:22-cv-1288 |
| MASROUR BARZANI | |
| | |
| | |
| Defendant. | |

## DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
### PURSUANT TO FEDERAL RULES 12(b)(1), (12(b)(2), 12(b)(6), and 12(b)(7)

**Benjamin G. Chew** (VSB # 29113)
Email: bchew@brownrudnick.com
Tel.: (202) 536-1700
BROWN RUDNICK LLP
601 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005

*Counsel for Defendant, Prime Minister Masrour Barzani*

**David G. Barger** (VSB # 21652)
Email: bargerd@gtlaw.com
Tel.: (703) 749-1300; Fax: (703) 749-1301
GREENBERG TRAURIG LLP
1750 Tysons Boulevard, Suite 1000
McLean, VA 22102

**Robert P. Charrow:** charrowr@gtlaw.com *
**Dominic E. Draye:** drayed@gtlaw.com *
**Juliana M. Laurello:** laurelloj@gtlaw.com *
**Joe R. Reeder:** reederj@gtlaw.com *
Tel: (202) 331-3100; Fax: (202) 261-0164
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037

*Counsel for Defendant, Prime Minister Masrour Barzani*

*Admitted *Pro Hac Vice*

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................................................ ii

**I. PLAINTIFF HAS NOT DEMONSTRATED *IN PERSONAM* JURISDICTION**.............. 1

    A.    The Complaint Fails to Establish a "Persistent Course of Conduct"...................... 1
    B.    Statements by the Prime Minister's Office, which News Outlets then Posted for All to Read, Worldwide, Do Not Constitute Action Directed at Virginia............. 4

**II. THIS COURT LACKS SUBJECT MATTER JURISDICTION** ....................................... 7

    A.    This Suit Should Be Dismissed Under the Foreign Sovereign Immunities Act ..... 7

        1. Plaintiff Has Failed to Plead Any Facts Supporting Defendant's Involvement with the Press Release ................................................................................... 7
        2. The Four Corners of the Plaintiff's Complaint Confirms this To Be a Suit Against the Government.................................................................................... 8

    B.    The Court Should Dismiss Under the *Barr v. Mateo* Doctrine.............................. 9

    C.    Common Law Foreign Sovereign Immunity Applies Because Exercising Jurisdiction Would Enforce a Rule of Law Against a Foreign State .................... 9

    D.    The Act of State Doctrine Applies and Bars Plaintiff's Action .......................... 11

**III. THE *PHILIPPINES'* DOCTRINE WARRANTS DISMISSAL**...................................... 12

**IV. PLAINTIFF'S RESPONSE DOES NOT ADDRESS THE LEGAL DEFICIENCIES IN THE COMPLAINT, WHICH FAILS TO STATE A CLAIM FOR RELIEF** ..................... 13

    A.    Plaintiff, as a Self-Avowed Public Advocate Who Writes and Conducts Interviews on the Internet, Is a Public Figure, But Has Failed to Plead Actual Malice Necessary to Support Her Defamation Claim........................................... 13

        1. Plaintiff Is a Public Figure Under the First Amendment................................ 13
        2. Plaintiff Has Failed to Plead Facts Supporting Actual Malice........................ 17

    B.    Plaintiff Has Failed to Allege Facts to Support Assault by Press Release ........... 17

    C.    The Tort of Stalking by Press Release Does Not Exist ........................................ 19

    D.    Plaintiff Has Failed to Adequately Plead IIED.................................................... 19

**CONCLUSION** ............................................................................................................. **20**

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    **Page(s)**

*Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*,
   140 S.Ct. 2082 (2019)..............................................................................14

*ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*,
   293 F.3d 707 (4th Cir. 2002) ..................................................................5,6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................2, 3, 7, 9, 17

*Barr v. Matteo*,
   355 U.S. 171 (1957).................................................................................9, 10

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................2, 3, 7, 9, 17

*Blankenship v. Commonwealth*,
   71 Va. App. 608 (2020). ........................................................................17, 18

*Blue Ridge Bank v. Veribanc*,
   755 F.2d 371 (4th Cir. 1985) ...................................................................2

*Boyd v. Green*,
   496 F. Supp. 2d 691 (W.D. Va. 2007) ...................................................4

*Bridges v. Wixon*,
   326 U.S. 135 (1945)...............................................................................14

*Burnett v. Al Baraka Inv. & Dev. Corp.*,
   292 F. Supp. 2d 9 (D.D.C. 2003) ...........................................................10

*Butters v. Vance Intern., Inc.*,
   225 F.3d 462, 466 (4th Cir. 2000) ..........................................................9, 10

*Buzz Photos v. China*,
   No. 3:20-cv-656-K-BN, 2020 U.S. Dist. LEXIS 219715 (N.D. Tex. Nov. 24,
   2020) .......................................................................................................8

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)...............................................................................18

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)...............................................................................4

*Eramo v. Rolling Stone*, LLC,
    209 F. Supp. 3d 862 (W.D. Va. 2016) ...................................................................15

*FireClean, LLC v. Tuohy*,
    No. 1:16-cv-0294, 2016 U.S. Dist. LEXIS 96294 (E.D. Va. July 21, 2016)..........................19

*First American First, Inc. v. Nat'l Ass'n of Bank Women*,
    802 F.2d 1511 (4th Cir. 1986) ...................................................................2

*Fitzgerald v. Penthouse Int'l, Ltd.*,
    691 F.2d 666 (4th Cir. 1982) ...............................................................15, 16

*Harris v. Kreutzer*,
    271 Va. 188 (Va. 2006)................................................................................20

*Hatfill v. The New York Times Co.*,
    532 F.3d 312 (4th Cir. 2008) ....................................................................15

*Hourani v. Mirtchev*,
    796 F.3d 1 (D.C. Cir. 2015) ...............................................................11, 12

*Hyperbaric Options, LLC v. Oxy-Health*, LLC, 2013 U.S. Dist. LEXIS140347,
    (E.D. Mich. Sept. 30, 2013) ....................................................................4

*Ivey v. Lynch*,
    No. 1:17CV339, 2018 U.S. Dist. LEXIS 133656 (M.D.N.C. Aug. 8, 2018) ...................10, 11

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*,
    115 F.3d 1020 (D.C. Cir. 1997) ...........................................................7, 8, 10

*Letter Carriers v. Austin*,
    418 U.S. 264, 284 (1974)...........................................................................16

*Lewis v. Mutond*,
    918 F.3d 142 (D.C. Cir. 2019) ..................................................................11

*New York Times v. Sullivan*,
    376 U.S. 254 (1964)...........................................................................13, 14

*Odhiambo v. Republic of Kenya*,
    930 F. Supp. 2d 17 (D.C. Cir 2013). ..........................................................8

*Republic of Philippines v. Pimentel*,
    553 U.S. 851 (2008)...........................................................................12, 13

*Robinson v. Egnor*,
    699 F. Supp. 1207 (E.D. Va. 1988) ............................................................2

*Rosario v. Wands*,
    No. 1:09-cv-663, 2009 U.S. Dist. LEXIS 84992 (E.D. Va. Sep. 17, 2009) ............................2

*Samantar v. Yousuf*,
    560 U.S. 305 (2010)........................................................................................7, 8, 10

*Schatz v. Repub. St. Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012)........................................................................................17

*Shen v. Albany Unified Sch. Dist.*, No. 3:17-cv-02478-JD, (2017 U.S. Dist. LEXIS
    196340 (N.D. Cal. Nov. 29, 2017)........................................................................14

*Turner v. Commonwealth*,
    792 S.E.2d 299 (Va. Ct. App., 2016). ........................................................................18

*United States ex rel. Wagda v. AT&T Corp.*,
    No. 2:19-cv-01057-JAM-AC, 2022 U.S. Dist. LEXIS 117285 (E.D. Cal. July
    1, 2022) ........................................................................................................13

*United States v. Bly*,
    510 F.3d 453 (4th Cir. 2007) ..............................................................................18, 19

*United States v. Carter,*
    No. 3:16-cv-674, 2017 U.S. Dist. LEXIS 151191 (E.D. Va. Sep. 18, 2017). .........................2

*United States v. Sryniawski*,
    48 F.4th 583 (8th Cir. 2022). ........................................................................................17

*Walsh v. Leon*,
    No. 2:21-cv-531, 2022 U.S. Dist. LEXIS 143115 (E.D. Va. Aug. 10, 2022) .........................5

*W.S. Kirkpatrick & Co., Inc. v. Env'tl Techonics Corp., Int'l*,
    493 U.S. 400 (1990)........................................................................................11, 12

*Young v. New Haven Advocate*,
    315 F.3d 256 (4th Cir. 2002) ..............................................................................6

**Constitution, Statutes**

Due Process Clause........................................................................................1, 4, 7

First Amendment ........................................................................................14, 15

Va. Code § 8.01-328.1(A)........................................................................................3

Va. Code § 8.01-328.1(A)(4)........................................................................................1, 3

Va. Code § 8.01-328.1(A)(6) ............................................................................................................2

**Rules**

Fed. R. Civ. P. 8 ...............................................................................................................7, 9, 19

Fed. R. Civ. P. 19 ...............................................................................................................12, 13


**Other Authorities**

RESTATEMENT (SECOND) OF TORTS § 31 (1965) ..........................................................................18

Shnyar A Hassan, Facebook (Feb. 28, 2023, 8:39 PM)
    https://www.facebook.com/shnyarahassan/videos/6110913195633750 ................................15

Plaintiff's Opposition ("Response") (Doc. # 25) ignores multiple arguments in Defendant's Memorandum.  *See* Defendant's MTD Memorandum ("Memo") (Doc. # 11).  Those arguments are therefore conceded.  Plaintiff nowhere contests that she is asking this Court to wade into a longstanding political dispute between rival political parties in Kurdistan.  Nor does she contest that her defamation claim revolves around one Kurdish word in a 194-word government press release that translates into four different English words.  Nor does Plaintiff contest that she has communicated with and thus had a professional relationship with the American reporter at issue.

Nor does Plaintiff anywhere dispute this Court's lack of general jurisdiction over the Prime Minister, or her lack of Article III standing to maintain her claims, all of which depend on the speculative actions of unknown and unknowable religious extremists.  And while applicability of the Foreign Sovereign Immunities Act ("FSIA") is contested, Plaintiff does not contest that all four alleged torts are foreclosed by FSIA if that statute does, in fact, apply.  Finally, Plaintiff concedes that the three ancillary torts all depend on her defamation claim.

## I.   PLAINTIFF HAS NOT DEMONSTRATED *IN PERSONAM* JURISDICTION

Plaintiff nowhere contests the lack of general personal jurisdiction over Defendant, thereby effectively conceding that issue.  As to specific jurisdiction, Plaintiff has failed to plead facts necessary to support jurisdiction both under the Commonwealth's long-arm statute and the minimum contacts requirement of Due Process.

### A.   The Complaint Fails to Establish a "Persistent Course of Conduct"

Virginia's long-arm statute requires a "persistent course of conduct" in Virginia.  Va. Code § 8.01-328.1(A)(4).  The Complaint alleges no such thing, which is understandable given Defendant's position as Prime Minister of Kurdistan.  Memo at 8.

Plaintiff first attempts to address this requirement by alleging that Defendant (with others, through a holding company) owns a property in Virginia.  But ownership alone is *not* "conduct." The long-arm statute references property ownership as a basis for jurisdiction, but requires that the "cause of action <u>arise from</u> the person's . . . [h]aving an interest in, using, or possessing real property in this Commonwealth."  Va. Code § 8.01-328.1(A)(6) (emphasis supplied).  *See United States v. Carter*, Civil Action No. 3:16-cv-674, 2017 U.S. Dist. LEXIS 151191, at *19 (E.D. Va. Sep. 18, 2017) (suit must "arise[] out of" property interest).

Next, the Complaint alleges, and the Response repeats, that the Prime Minister regularly visits the U.S., including Virginia.  Cmpl. ¶ 9.  But, for visits to establish jurisdiction, the law requires "persistent" visits, requiring "at a minimum, . . . some sort of ongoing interaction with the forum state."  *Robinson v. Egnor,* 699 F. Supp. 1207, 1212 (E.D. Va. 1988); *see* Memo at 8. In *Robinson*, the defendant's job required ongoing communication with his office in Virginia. This feature of his employment, the court held, constituted ongoing and continuous contact and a persistent course of conduct in Virginia. *See Robinson*, 699 F. Supp. at 1212-13; *see also Blue Ridge Bank v. Veribanc*, 755 F.2d 371, 373-74 (4th Cir. 1985) (non-resident defendant company receiving, filling and getting paid for 57 orders in a 17-month period from Virginia customers sufficient to establish persistent course of conduct); *First American First, Inc. v. Nat'l Ass'n of Bank Women*, 802 F.2d 1511, 1514 (4th Cir. 1986) (jurisdiction proper over non-resident non-profit making bi-monthly mailings of its journal to 1,150 Virginia members); *see also Rosario v. Wands*, No. 1:09-cv-663, 2009 U.S. Dist. LEXIS 84992, at *15 (E.D. Va. Sep. 17, 2009).

Plaintiff here has failed to identify any visits to the U.S. by the Prime Minister in any capacity at any time.  Simply declaring that he has visited Virginia "enough" is the sort of conclusory pleading found inadequate in both *Twombly* and *Iqbal*.  *See Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("'naked assertion[s]'" devoid of 'further factual enhancement'" are inadequate.).

Plaintiff's unsupported contention that meetings between "Person 1" and Plaintiff at undisclosed locations during 2021 and 2022 (Cmpl. ¶ 64) somehow create jurisdiction over the Prime Minister because she (Person 1) allegedly once conveyed in Virginia a message from the Defendant (Cmpl. ¶ 65) also does not advance the ball.  The long-arm statute is a syllogism and addresses in its conclusion tortious acts committed by agents, but the hypothesis (*i.e.*, the "if" clause) still requires the defendant's presence in the forum.  Specifically, the statute states, in relevant part:

> A court may exercise personal jurisdiction over a person, who <u>acts directly or by an agent</u>, as to a cause of action arising from the person's:
>
> *   *   *
>
> > 4.  Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if <u>he</u> regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth.

Va. Code § 8:01-328.1(A) (emphasis added).  Thus, the injury can be caused by an agent, but a defendant still must engage in a persistent course of conduct in the Commonwealth to satisfy (A)(4).  A single meeting in Tysons a year after the alleged defamation is hardly the stuff of a "persistent course of conduct."

Finally, Plaintiff appears to argue that causing a press release to be posted on websites located in Kurdistan, which can be accessed by readers in Virginia equates to engaging in a persistent course of conduct in Virginia.  Response at 8-9.  The long-arm statute, however, measures a defendant's presence in Virginia, not Virginians' ability to access a third-party website juridically distinct from a defendant.  If online visibility were enough, anyone posting on

any third-party website—no matter where the person may be located—could be hauled into a Virginia court under the Virginia long-arm statute.  Indeed, websites generally are not amenable to jurisdiction under Virginia's long-arm statute.  Virginia courts hold that an out-of-state website can satisfy the long-arm statute, only if it is "soliciting business."  See e.g., *Boyd v. Green*, 496 F. Supp. 2d 691, 712 (W.D. Va. 2007).  But Plaintiff nowhere alleges that Defendant solicits business via the websites in question.

**B.     Statements by the Prime Minister's Office, which News Outlets then Posted for All to Read, Worldwide, Do Not Constitute Action Directed at Virginia**

Because Plaintiff fails to satisfy the conditions of Virginia's long-arm statute, constitutional analysis is unnecessary.  But exercising personal jurisdiction here would also offend established Due Process principles, including the "minimum contacts" requirement.  Plaintiff seeks to satisfy that constitutional prerequisite by asserting that the government press release was posted on the internet in Kurdistan with the intent that those in "the Kurdish community and other individuals in Northern Virginia, where [the Prime Minister] knew and understood Plaintiff SHNYAR resides" could access it.  Cmpl. ¶ 77.  Plaintiff urges the Court to use a sliding scale to assess this argument.  But a sliding scale is unavailing for two reasons.  First, the only cases to apply that standard involve an internet site owned or operated by a defendant himself. *Hyperbaric Options, LLC v. Oxy-Health*, LLC, 2013 U.S. Dist. LEXIS 140347, *16 (E.D. Mich. Sept. 30, 2013) (holding that *Zippo* interactivity test does not apply because, *inter alia*, defendants neither own nor operate the website). For due process purposes, the defendant's contact with the forum state is determinative, not the contacts of a third-party reporting defendant's words.  Minimum contact by proxy is an oxymoron.  *See Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014) (specific jurisdiction can be asserted against a corporation where the corporation's own in-state activities "give rise to the liabilities sued on.") (quoting *International Shoe Co. v. Washington*, 326 U.S.

4

310, 317 (1945)).  And while "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there," *Walsh v. Leon*, Civil Action 2:21-cv-531, 2022 U.S. Dist. LEXIS 143115, at *26-27 (E.D. Va. Aug. 10, 2022), there is no allegation that any website owner is an agent of Defendant.[1]  To make this jurisdictional argument, Plaintiff would have to drop the ruse that she is suing the Prime Minister in his personal capacity.

Second, even if a "sliding scale" analysis applied, the conduct alleged here falls at the scale's end, where a State lacks jurisdiction.  The Fourth Circuit's description of that end of the scale applies with full force to this case: "a defendant has simply posted information on an Internet Website which is accessible to users in foreign jurisdictions." *ALS Scan*, 293 F.3d at 713-14 (quoting *Zippo Mfg., Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Penn. 1997)). Plaintiff concedes that where a website is totally passive and "does little more than make information available to those who are interested in it is not grounds for exercise [of] personal jurisdiction."  Response at 9 (quoting *TELCO Communications v. An Apple A Day*, 977 F.Supp. 404, 406 (1997)) (emphasis supplied).  That is precisely the case here; no amount of sliding will help Plaintiff.

Turning to the three-part test in *ALS Scan*, Plaintiff has no response for the fact that posting information online fails under the first prong because such behavior does not "direct[] electronic activity into the State."  293 F.3d at 714.  If the mere fact that residents of a given State can read a website sufficed for jurisdiction, then "notions of limited State sovereignty and personal jurisdiction would be eviscerated."  *Id.* at 713.  Plaintiff therefore skips the first prong to focus

---

[1]     The Complaint alleges that the Prime Minister and family "control" various social media accounts, without any explanation how that is relevant. *See* Cmpl. ¶¶ 52-53.  Nor does the Complaint allege that the Prime Minister, in his personal capacity, owns or operates any of the websites or other channels of communication.

on the second clause in the second prong of the *ALS Scan* test, which assesses the defendant's "manifested intent of engaging in business or other interactions within the State." Response at 9 (emphasis in Plaintiff's original). This approach also fails. For starters, the websites are not party defendants here and what they do in Virginia is irrelevant. Even if they were relevant, Plaintiff has not alleged that the web postings were in anyway "interactive," as is required for jurisdiction. *ALS Scan*, 293 F.3d at 714. No amount of political rhetoric can alter the nature of a website.

Plaintiff relies on *Young v. New Haven Advocate*, 315 F.3d 256, 259 (4th Cir. 2002), a decision that actually undermines her argument. In *Young*, a Virginia prison warden sued two Connecticut-based newspapers for libel in federal court in Virginia over stories critical of the prison's treatment of inmates from Connecticut. *Id.* Although one newspaper had eight subscribers in Virginia, neither solicited subscriptions from Virginia residents. *Id.* at 260. Two reporters called Virginia residents, but no one traveled to Virginia. *Id.* The court ruled that it lacked *in personam* jurisdiction because "[t]he overall content of both websites is decidedly local, and neither newspaper's website contains advertisements aimed at a Virginia audience. . . . The websites are not designed to attract or serve a Virginia audience." *Young*, 315 F.3d at 263.

Substantively, the court noted that "[t]he focus of the articles, however, was the Connecticut prisoner transfer policy and its impact on the transferred prisoners and their families back home in Connecticut." *Id.* Here, the focus of the press release, aimed, as Plaintiff concedes, at a "worldwide audience," Cmpl. ¶¶ 58, 82, & 88, was a news article by an American reporter. The stated purpose of the press release was to defend against a scurrilous attack on Kurdistan by an American. Here, unlike in *Young*, the websites are not owned by Defendant, are not alleged to

6

have any special connection to Virginia, and do not seek any interaction from users beyond reading the news.

Plaintiff expressly acknowledges that a purely passive out-of-state website does not give rise to the minimum contacts necessary to satisfy Due Process.  To suggest that the "worldwide" press release was aimed at Virginia is not plausible within the meaning of *Iqbal* and *Twombly*, and indeed, is inconsistent with the Complaint.  Asserting jurisdiction on this basis would expose online speakers to litigation in every State in the nation.

## II.    THIS COURT LACKS SUBJECT MATTER JURISDICTION

### A.    This Suit Should Be Dismissed Under the Foreign Sovereign Immunities Act

#### 1.    Plaintiff Has Failed to Plead Any Facts Supporting Defendant's Involvement with the Press Release

FSIA does not allow a plaintiff to nullify the immunity it guarantees by uttering the magic words "personal capacity."  Indeed, Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *See e.g., Twombly*, 550 U.S. at 555; (see also, *Samantar v. Yousuf*, 560 U.S. 305, 325 (2010)).  Instead of addressing the factual problems in her complaint, Plaintiff cites an inapposite case involving the drunk son of the Crown Prince of Abu Dhabi, in which the court ruled that acting through a government office "does not cloak [] unofficial actions with immunity."  Response at 15, *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1028 (D.C. Cir. 1997).  In *Jungquis*t, the intoxicated son of Abu Dhabi's Crown Prince of Abu Dhabi caused a boating accident and serious injury to the plaintiff.  The son promised to pay the injured party's medical expenses, provided plaintiff concealed the incident from the Crown Prince.  *See id*.  When the son later ceased payments, the plaintiff sued.  The court found that the Crown Prince's expressions of disapproval "demonstrated that the Abu Dhabi government would have no part in an allegedly corrupt

bargain with [the injured party's family]." *Id*. Thus, the district court concluded, the son's promise to the injured party did not further "the interests of the sovereign" but were instead "a personal and private action," and hence was not entitled to FSIA immunity. *Id*.

An inebriated son seeking sovereign immunity for a bargain he struck to conceal (from the sovereign) his role in a drunken boating accident, starkly contrasts with an official press release issued by a government's Office of the Prime Minister.

**2.  The Four Corners of the Plaintiff's Complaint Confirms this To Be a Suit Against the Government**

Plaintiff also misconstrues *Samantar*, arguing that "[a]fter *Samantar*, the FSIA does not apply whenever an official acts in his official capacity; it applies only when an official is *sued* in his official capacity." Response at 12 (emphasis in original). That is not what *Samantar* says. As multiple federal courts have recognized since *Samantar*, "to determine whether a suit against a foreign official is governed by the FSIA, [a court] must look to whether the suit is against the official personally or whether the state is the 'real party in interest.'" *Odhiambo v. Rep. of Kenya*, 930 F.Supp.2d 17, 34 (D.D.C. 2013) (citation omitted). Determining the capacity in which a defendant has been sued requires examining "the allegations in the complaint and the course of proceedings." *Buzz Photos v. China*, No. 3:20-cv-656-K-BN, 2020 U.S. Dist. LEXIS 219715, at *17 (N.D. Tex. Nov. 24, 2020) (internal quotations omitted). Once the court concludes that the state is "the real party in interest," the suit is treated as an action against the foreign state itself and is governed by FSIA. *Odhiambo*, 930 F.Supp.2d at 34; see also, *Buzz Photos*, 2020 U.S. Dist. LEXIS 219715, at *16-17 (claims against individual defendants deemed claims against the foreign state based on allegations in the complaint).

The Complaint here establishes the KRG is the "real party in interest."  The press release lists the Office of the Prime Minister (three times) as its source.  Cmpl. ¶ 56.  Moreover, it

speaks exclusively in terms of the government's interest in discrediting a news story critical of the ruling party's "reforms."  *Id.*  Nothing in the press release and nothing in the Complaint indicates that the Prime Minister himself had any personal involvement in instigating, crafting, reviewing, or issuing the release.[2]  Simply put, Plaintiff's claims arise exclusively from official government actions aimed at defending the government and one of its highest-ranking officials from political criticism in a news article.  Without credible supporting facts, no amount of creative pleading can convert a governmental press release into a private act.

**B.**   **The Court Should Dismiss Under the *Barr v. Mateo* Doctrine**

Plaintiff attempts to bypass *Barr v. Matteo* immunity for government officials because Defendant is not an American, without offering any rationale as to why *Barr* immunity would not apply equally to foreign officials.  But the Fourth Circuit cited *Barr* and FSIA as forms of immunity that extend, as derivative sovereign immunity, to foreign government contractors.  *Butters v. Vance Intern., Inc*., 225 F.3d 462, 466 (4th Cir. 2000).  If foreign government contractors can derivatively invoke immunity, surely foreign government officials enjoy the same immunity.  While Plaintiff's response that *Butters* was an FSIA case is partially correct, the Fourth Circuit discussed both FSIA and *Barr*.  FSIA commands more discussion in covering the many FSIA exceptions, but the court relied on *Barr* for the proposition that sovereign immunity turns on "the nature of the function being performed."  *Id*. Responding to an article alleging corruption is a quintessential government function.

**C.**   **Common Law Foreign Sovereign Immunity Applies Because Exercising Jurisdiction Would Enforce a Rule of Law Against a Foreign State**

---

[2]      Much of the Complaint is conclusory, i.e., devoid of supporting facts.  In one instance, Plaintiff baldly alleges, that the Prime Minister caused the publication of the press release at issue.  This sort of pleading is inconsistent with Rule 8 as interpreted in *Twombly* and *Iqbal*.

Even assuming the KRG were not the real party in interest – and it is – the Complaint alleges actions by Prime Minister Barzani that entitle him to common-law sovereign immunity. Common law sovereign immunity "extends to an individual for acts taken in his official capacity." *Samantar*, 560 U.S. at 322. "Where there is a dispute about whether an individual was acting in an official capacity, 'the relevant inquiry. . . focuses on the nature of the individual's alleged actions, rather than the alleged motives underlying them.'" *Burnett v. Al Baraka Inv. & Dev. Corp.*, 292 F. Supp. 2d 9, 14 (D.D.C. 2003) (quoting *Jungquist*, 115 F.3d at 1028).

Here, a Prime Minister's act of communicating with his citizens is a clear case of official action. This suit seeks to impose U.S. legal standards on the domestic functions of a foreign government and threatens to permit American plaintiffs to haul foreign government officials into a U.S. court anytime anyone in that government issues a statement that someone finds offensive. As such, the Court does not permit these types of "personal capacity" suits against U.S. government officials because of its disruptive effect on governance. *See Barr v. Matteo*, 360 U.S. 564 (1959) (providing complete immunity from defamation suits for press releases authorized by high-ranking government officials).[3]

Other precedent illustrates the same point. The court in *Ivey v. Lynch* found that a U.S. citizen (Lynch) acting as an agent of a foreign sovereign (an insolvency administrator appointed by a German court), was immune from suit for selling a German resident's interest in a U.S.

---

[3]     There is no reason that common law sovereign immunity and the *Barr v. Matteo* doctrine would not apply to foreign government officials. As noted in Defendant's Memo, the Fourth Circuit already has extended *Barr* to contractors of foreign governments as a form of derivative immunity. *See, Butters v. Vance Intern., Inc*., 225 F.3d 462, 466 (4th Cir. 2000). As a simple matter of logic, the derivative immunity cannot derive from a lack of immunity for the sovereign itself.

company.  No. 1:17CV339, 2018 U.S. Dist. LEXIS 133656, at *20 (M.D.N.C. Aug. 8, 2018).

Applying the *Lewis v. Mutond* test for conduct-based immunity, the court found that "denying

*Lynch* immunity and ultimately determining the merits of the claims against him would have the

effect of enforcing a rule of law against Germany." *Id.*  If exercising jurisdiction over a U.S.

citizen's sale of a U.S. asset held by a foreign citizen would "have the effect of enforcing a rule

of law" against the foreign state, surely subjecting the KRG's Prime Minister to the jurisdiction

of a U.S. court for a government press release aimed at the people of Kurdistan would have the

same effect.

### D.    The Act of State Doctrine Applies and Bars Plaintiff's Action

The Act of State doctrine, as Plaintiff recognizes, hinges in part on whether a plaintiff is

asking a court, either directly or indirectly, to declare invalid the official act of a foreign state.

Plaintiff, relying on *W.S. Kirkpatrick & Co., Inc. v. Env'tl Techonics Corp., Int'l*, 493 U.S. 400

(1990), asserts that a defamation action would not qualify for the Act of State doctrine.  Plaintiff

misunderstands the doctrine and *Kirkpatrick*.  In *Hourani v. Mirtchev*, 796 F.3d 1 (D.C. Cir.

2015), the DC Circuit applied the Act of State doctrine in a case remarkably similar to the one at

bar.  In that case, an allegedly defamatory statement was posted on the Kazakh Embassy's

website in Washington.  The target of that statement sued a private defendant who was alleged to

have caused the Embassy to publish the statements.  The Court held that the Act of State doctrine

barred plaintiffs' defamation claims because the "defamatory publication was necessarily official

governmental speech formulated and directed from Astana, Kazakhstan." *Id*. at 13.  It further

explained that "once the statements appeared on the official Embassy website with the active

approval and support of the Ambassador, they became the official speech of the Kazakh

government" and constituted the very type of "distinctly sovereign act and formal governmental

action concerning internal affairs that triggers the Act of State doctrine's and international comity's traditional concerns." *Id.* at 14 (internal quotations omitted). The *Hourani* case distinguished *Kirkpatrick* because the latter court could segregate the government's actions from those of the private defendants. *Id.* at 14-15. There, "deciding the case would not have required the court to declare the government contract legally invalid." *Id.* at 15.

In this case, however, like in *Hourani*, Plaintiff can recover "only if [she] can persuade a factfinder that those official foreign government statements published on a foreign sovereign's own communication platform were themselves defamatory, and thus invalid." *Id.* at 15. Defamation in an official government communication necessarily "impugn[s] or question[s] the nobility of a foreign nation's motivations." *Kirkpatrick*, 493 U.S. at 408 (citation omitted).

## III.   THE *PHILIPPINES'* DOCTRINE WARRANTS DISMISSAL

Plaintiff argues that *Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008), which requires joinder of the KRG as a necessary party and dismissal of the entire action, ought not to apply because there is no dispute over the ownership of property, as there was in *Pimentel*. The case does not support that interpretative straitjacket. The *Pimentel* Court explained that "[i]n considering whether the [Philippines] would be prejudiced if the action were to proceed in their absence, the Court of Appeals gave insufficient weight to their sovereign status," which was decisive under Rule 19 because any consideration of the merits in the sovereign's absence is "itself an infringement on . . . sovereign immunity." *Pimentel*, 553 U.S. at 864-865. The pivotal issue was not property ownership but rather prejudice to the sovereign if the action were to continue in its absence.

Plaintiff makes light of a sovereign's duty to communicate with its citizenry. In fact, the implication of Plaintiff's argument is that the Marcos's assets were more important than government communication. Courts have consistently recognized that defamation suits,

especially those that are politically motivated, can have a chilling effect on speech.  In this regard, every speaker—including a sovereign—has an interest in protecting the right to communicate.  Where a suit threatens that right, as is the case here, the sovereign ought to be joined as a necessary party and the matter dismissed.  In *United States ex rel. Wagda v. AT&T Corp.*, 2:19-cv-01057-JAM-AC, 2022 U.S. Dist. LEXIS 117285 (E.D. Cal. July 1, 2022), appeal docketed, No. 22-16173 (9th Cir.), a relator claimed that California's unclaimed property law was preempted by the False Claims Act but did not include California as a defendant.  The Court granted the private defendant's *Philippines'* motion and dismissed the case.  It concluded that "finding in [Relator's] favor would require a determination that escheating certain property under California's UPL statute violates the FCA.  Thus, there is no way to avoid prejudice to the State." *Id*. at 6.  California's interest in *Wagda* was the continued enforceability of its statute as not preempted.  It was not limited to ownership of any particular item of tangible property.

A sovereign's interest in intangible rights is just as deserving of protection as its interest in tangible assets.  Plaintiff invents from whole cloth a contrary rule that would make foreign sovereigns required parties under Rule 19 when property is at issue, but not when litigation threatens the sovereign's ability to speak freely.  That is not the law.

## IV.   PLAINTIFF'S RESPONSE DOES NOT ADDRESS THE LEGAL DEFICIENCIES IN THE COMPLAINT, WHICH FAILS TO STATE A CLAIM FOR RELIEF

### A.   Plaintiff, as a Self-Avowed Public Advocate Who Writes and Conducts Interviews on the Internet, Is a Public Figure, But Has Failed to Plead Actual Malice Necessary to Support Her Defamation Claim

#### 1.   Plaintiff Is a Public Figure Under the First Amendment

Plaintiff argues that *New York Times Co. v. Sullivan,* 376 U.S. 254 (1964) does not apply here for two reasons: the First Amendment does not apply to Defendant as a foreign citizen, and further, Plaintiff is not a public figure even though she identifies no occupation apart from public

policy advocacy, Cmpl. ¶ 8, acknowledges that the Prime Minister's only reason for mentioning her is her political opposition, *id.* ¶¶ 3, 48, and further acknowledges making use of the media by "providing interviews, and writing articles speaking out on these [political] issues[.]" *Id.* ¶ 47.

First, relying on *Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*, 140 S.Ct. 2082, 2086, 2087 (2019), Plaintiff posits that "foreign citizens outside the U.S. territory do not possess rights under the U.S. Constitution," including First Amendment rights.  The problem here is that Plaintiff is hauling Defendant into a U.S. court because of an allegedly defamatory word web-available in the U.S.  Once a court asserts even tentative jurisdiction over a defendant, the Equal Protection Clause extends First Amendment protections to the defendant.  *See* U.S. Const., 14th Amend., § 1 (No state may "deny to any person within its jurisdiction the equal protection of the laws.").  Plaintiff has also alleged that Defendant is a permanent U.S. resident, *i.e*., Green Card holder, meaning that he enjoys full First Amendment protections within the U.S. States, which is precisely where Plaintiff asserts that the allegedly defamatory statement was web-available.  *See Bridges v. Wixon*, 326 U.S. 135, 148 (1945).[4]

Second, Plaintiff claims that *New York Times* does not apply because she is not a public figure.  She bases this assertion on the newly minted "fact" that she has "no access to media especially in Kurdistan."  Response at 19, 20.  The Complaint contradicts Plaintiff's new characterization of her public prominence and media savvy.  It alleges, for instance, that Plaintiff "is an advocate for women's rights in Kurdistan, Iraq," (Cmpl. ¶ 8) and that she and her husband "have been critical of [Defendant's] corruption."  *Id*. at 46. "From the United States, [Plaintiff]

---

[4]     During any alleged visit to the U.S., Defendant has a First Amendment right to "receive, [and] read" news from his homeland uncensored to accommodate Plaintiff's political sensibilities. *Shen v. Albany Unified Sch. Dist.*, 2017 U.S. Dist. LEXIS 196340, (N.D. Cal. Nov. 29, 2017), at *16 (quoting *Griswold v. Connecticut*, 381 U.S. 479, 482 (1965)).

continued her work, using her social media platform, providing interviews, and writing articles speaking out on these issues . . . ." Cmpl. at ¶ 47.[5]

  To determine whether a plaintiff is a private person or a limited-purpose public figure in relation to a particular controversy, courts in this Circuit apply a five-factor test. *Fitzgerald v. Penthouse Int'l, Ltd.*, 691 F.2d 666, 668 (4th Cir. 1982); *see* Memo. at 24–25.

  Plaintiff argues that she does not satisfy any of the *Fitzgerald* factors. First, Plaintiff argues (against the second and third factors) that the controversy she engaged concerned government corruption, but the allegedly defamatory statement involved a different controversy—her marital fidelity. That is not how the test works. Rather, the test focuses on the controversy in which the allegedly defamatory communication arose, without artificially walling off the alleged defamation as its own "controversy." Two courts in this Circuit have cautioned that it "would be inappropriate to shrink all controversies to the specific statements of which a plaintiff complains." *Eramo v. Rolling Stone*, LLC, 209 F. Supp. 3d 862, 870 (W.D. Va. 2016) (quoting *Nat'l Life Ins. Co. v. Phillips Pub., Inc*., 793 F.Supp. 627, 637 (D. Md. 1992). Yet, that is precisely what Plaintiff has sought to do here. Instead, courts "look to the scope of the message conveyed in . . . the articles . . . [plaintiff] is challenging." *Hatfill v. The New York Times Co*., 532 F.3d 312, 323 (4th Cir. 2008). Here, Plaintiff is challenging a December 9, 2021,

---

[5] While not material to the Prime Minister's Rule 12(b) motion, the Court should know of Plaintiff's Facebook page (Feb 28, 2023), where she publicly broadcasts her Parliamentarian husband. While featured no fewer than 20 times in the Complaint (¶¶ 5, 8, 34, 36, 46, 48, 54, 60, 64, 69 & 70), after Defendant's Memo explained the "public figure" standard for a politician's spouse, he is nowhere mentioned in Plaintiff's Response. Equally telling: Plaintiff openly and repeatedly reconnects herself with the reporter whose affiliation she pretends is cause for fear of violence, even murder. *See* Shnyar A Hassan, Facebook (Feb. 28, 2023, 8:39 PM) https://www.facebook.com/shnyarahassan/videos/6110913195633750.

government press release which, according to the Complaint, sought to refute a December 7, 2021 American news article alleging corruption in the KRG.

On its face, the government's December 9 response refutes the news article.  According to Plaintiff's English translation of that press release, the government stated that "[t]he report is far from the truth and is unsubstantiated" and that "[t]o validate his lies, the reporter has relied on a contract that carries the PM's signature. The signature does not belong to the PM."  Cmpl. ¶ 56.  The government release went on to question the credibility and objectivity of the reporter: "it became evident that the reporter has [a relationship or communicated, depending on the translation] with the wife of a former Iraqi-Kurdish member of Parliament."  *Id.*  It then dwells on Plaintiff's husband's record and electoral defeat.  Ignoring the context of the release itself, Plaintiff seizes on the word "relationship."  *But see, Letter Carriers v. Austin*, 418 U.S. 264, 284 (1974) (stressing importance of context in which allegedly defamatory statement appears).  But the press release aimed to refute the notion by political opponents that there is governmental corruption.  This is the precise controversy that Plaintiff acknowledges having voluntarily and publicly thrust herself into years before.  The press release is decidedly not about marital infidelity.

Plaintiff argues that the fourth *Fitzgerald* factor has not been satisfied because there was no debate over her marital fidelity prior to the press release.  Response at 21.  But this argument depends on shrinking the controversy to focus exclusively on the Plaintiff.  As noted above, this Circuit does not countenance the artificial narrowing Plaintiff urges here.

Plaintiff also argues against her public figure status because she "only" has access to social media where she provides interviews, writes articles, and apparently translates English articles with commentary.  However, this entire case revolves around social media and internet

16

communication; that is where the allegedly defamatory statement appeared in response to the original December 7 article that appeared in the same media.  The fact that Plaintiff has not been interviewed by *60 Minutes* is not relevant.  Her ability to communicate appears to be remarkably robust.  Indeed, she claims that the Prime Minister "retaliat[ed] against her for her efforts to expose his corruption, and also for translating into Kurdish language and posting on the internet Kopplin's articles in The American Prospect."  Cmpl. ¶ 59.  This is hardly an example of an individual who lacks access to the channels of effective communications.[6]

### 2.   Plaintiff Has Failed to Plead Facts Supporting Actual Malice

Plaintiff goes on to argue that, even if she is a public figure, the Complaint adequately alleges actual malice.  First, the Complaint never alleges "actual malice."  Second, Plaintiff's argument is nothing more than a listing of the conclusory allegations in the Complaint devoid of any factual underpinnings as required by *Iqbal* and *Twombly*.  This is precisely the same problem the Prime Minister's Memo highlights.  Knowing her complaint is factually defective, Plaintiff alludes to discovery, but ignores the threshold plausibility pleading burden she bears.  *See e.g., Schatz v. Repub. St. Leadership Comm.*, 669 F.3d 50 at 56 (1st Cir. 2012).

### B.   Plaintiff Has Failed to Allege Facts to Support Assault by Press Release

Plaintiff acknowledges, as she must, that her assault claim is based on the defamation claim.  She also acknowledges that "words alone are insufficient to constitute an assault[,]" but that "words" have to be considered when determining whether Plaintiff's apprehension was reasonable.  Response at 24.  In Virginia, a defendant must engage "in an overt act intended to place the victim in fear or apprehension of bodily harm[.]" *Blankenship v. Commonwealth*, 71

---

[6]     Further, as noted in the Memo, when spouses of elected officials publicly support their spouses' electoral activities and ambitions by writing articles or giving interviews, they are public figures. *See United States v. Sryniawski*, 48 F.4th 583, 588 (8th Cir. 2022).

Va. App. 608, 620–21 (2020) (words combined with his aggressive movements supported reasonable fear).  Even in so-called threat-assault cases, there must be some overt act placing a plaintiff in imminent fear of a battery.  The RESTATEMENT (SECOND) OF TORTS § 31, cmt. d. (1965), permits recovery where "[a]n entirely motionless highwayman, stand[s] with a gun in his hand and cry[s] "Stand and deliver!"  However, pointing a gun at someone is an overt act which can reasonably place that person in imminent apprehension of physical harm.  Here, no such overt act has been alleged.[7]  Plaintiff's reference to her luncheon with Person 1, who warned her about threats, occurred nearly one year after the alleged defamatory word was published.  This is hardly the stuff of "immediacy."  And it is difficult to equate a teacup or fancy sandwich at an eatery in Tysons, with a revolver pointed by a highwayman.

The assault claim fails for two other reasons: first, since Plaintiff agrees that assault is based on the defamation claim (*see* Response at 23), Plaintiff must also allege facts supporting "actual malice," which, as noted above, is absent here.  Second, Plaintiff fears harm by "ultra-conservative adherents of Islam" (Response at 23).  However, fears of attack by unknown, unknowable, and unnamed individuals are insufficient to support Article III standing, at least according to the Supreme Court in *Clapper v. Amnesty Int'l USA,* 568 U.S. 398 (2013).  Plaintiff never addressed this fundamental defect.  Both of these fatal flaws infect Plaintiff's remaining claims—stalking by press release and intentional infliction of emotional distress.

---

[7]     Plaintiff relies on *Turner v. Commonwealth*, 792 S.E.2d 299 (Va. App., 2016) and *United States v. Bly*, 510 F.3d 453 (4th Cir. 2007).  Neither case involves assault.  Turner was prosecuted for violating Virginia's anti-noose statute, and Bly for violating the federal extortion statute.

### C.      The Tort of Stalking by Press Release Does Not Exist

Plaintiff claims that due to her counsel's typographical error in the Complaint, a separate statute which creates a private right of action under the so-called Electronic Stalking Statute was inadvertently omitted from the Complaint.  It does not matter.  Plaintiff fails to satisfy Virginia's Electronic Stalking Statute, which requires a defendant "on more than one occasion" to "electronically transmit[] [a] communication at another person."  A posting of a news article or press release on a passive website does not constitute a communication aimed at another person, no matter how many times it may be republished by others.  The Fourth Circuit in *Bly* upheld a conviction because a threatening letter "was not addressed to a public audience . . . it was delivered privately to specific individuals."  510 F.3d at 459.  The posting at issue here was addressed to a worldwide audience, as Plaintiff consistently points out.  As this Court has observed, "posting a comment to an online article seems several steps removed from deliberate[ly] targeting tortious communications toward an audience in a particular state." *FireClean, LLC v. Tuohy*, No. 1:16-cv-0294, 2016 U.S. Dist. LEXIS 96294, at *21-22 (E.D. Va. July 21, 2016) (quotation omitted).  The press release here is nothing more than the government's comment to an online article.  To treat it as some form of stalking demeans the anti-stalking statutes.

### D.      Plaintiff Has Failed to Adequately Plead IIED

Plaintiff has invoked this Court's diversity jurisdiction to assert claims under Virginia law.  She now finds that those Virginia State causes of action—including IIED—have elements that have not been met, and labels these failings as pleading "minutiae" (Response at 26) not required by Rule 8.  That is not the case.  Rule 8 requires that she set out facts to support her

19

emotional distress.  She has not done so.  The pleading requirements also reflect Virginia law's substantive distaste for IIED claims.

Plaintiff also states that Defendant did not take issue with other elements of IIED as pleaded.  Not true.  The other three elements are (1) "intentional or reckless" conduct that (2) "was outrageous and intolerable" and (3) bears a "causal connection . . . [to] the emotional distress[.]" *Harris v. Kreutzer*, 271 Va. 188, 191 (Va. 2006) (noting that IIED is "not favored").  The Memo argues that Plaintiff failed to plead facts showing that Defendant was involved in issuing the press release at the heart of the controversy, defeating the first and third elements.  Additionally, Defendant argued that the press release was a standard communication from a government to its people refuting political accusations.  That is neither outrageous nor intolerable.  Finally, Defendant explained that all of the torts, including IIED, are based on the defamation claim, and are therefore foreclosed by FSIA, and that Plaintiff has failed to plead actual malice necessary for defamation and her IIED claim.  *Hustler Magazine v. Falwell*, 485 U.S. 46, 56 (1988) (requiring IIED claims by a public figure to satisfy actual malice).

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant's Motion to Dismiss.

Dated:  March 2, 2023

Respectfully submitted,

____/s/ Benjamin G. Chew_____
**Benjamin G. Chew** (VSB # 29113)
Email: bchew@brownrudnick.com
Tel.: (202) 536-1700
BROWN RUDNICK LLP
601 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005

*Counsel for Defendant, Prime Minister
Masrour Barzani*

_____/s/ David G. Barger_____
**David G. Barger** (VSB # 21652)
Email: bargerd@gtlaw.com
Tel.: (703) 749-1300; Fax: (703) 749-1301
GREENBERG TRAURIG LLP
1750 Tysons Boulevard, Suite 1000
McLean, VA 22102

*Counsel for Defendant, Masrour Barzani*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 2nd day of March 2023, I caused a copy of the foregoing to be filed electronically with the Clerk of Court using the CM/ECF system, which then sent a notice of filing (NEF) to all counsel of record:

Dated:  March 2, 2023

_____/s/ David G. Barger_____
**David G. Barger** (VSB # 21652.)
Email: bargerd@gtlaw.com
Tel.: 703-749-1300; Fax: 703-749-1301
GREENBERG TRAURIG LLP
1750 Tysons Boulevard, Suite 1000
McLean, VA 22102

*Counsel for Defendant, Prime Minister*
*Masrour Barzani*