**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **SHNYAR ANWAR HASSAN,** ) | |
|     **Plaintiff,** ) | |
| ) | |
|     **v.** ) | **Case No. 1:22-cv-1288** |
| ) | |
| **MASROUR BARZANI,** ) | |
|     **Defendant.** ) | |

## MEMORANDUM OPINION

This defamation case is a political sideshow[1] brought by Plaintiff Shnyar Anwar Hassan ("Plaintiff"), a self-proclaimed Kurdish political advocate, against Defendant Masrour Barzani ("Defendant"), the prime minister of the Kurdistan autonomous region in Northern Iraq. Plaintiff, a U.S. citizen living in Virginia, has long publicly opposed Defendant's leadership of the Kurdistan Regional Government. Plaintiff alleges that in retaliation for her outspoken criticism of Defendant, Defendant caused the Office of the Prime Minister of the Kurdistan Regional Government to issue a defamatory statement implying that Plaintiff had an extramarital affair with an American journalist, which was published via the internet on several Kurdish news outlets. Plaintiff claims that the statement places her in imminent danger and Plaintiff's four-count Complaint asserts (i) assault, (ii) stalking, (iii) defamation, and (iv) intentional infliction of emotional distress. In response, Defendant has filed a Motion to Dismiss (Dkt. 10), arguing that Plaintiff's Complaint must be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2), Fed. R. Civ. P., and that the Complaint is barred by the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602 *et seq.* ("FSIA"). Defendant also claims that dismissal is required

---

[1] Although "political sideshow" accurately characterizes this dispute, this characterization is by no means intended to suggest that the case is unimportant or frivolous; like any case, this matter is unquestionably important to each of the parties.

1

by virtue of Rules 12(b)(6) and 12(b)(7). Defendant's Motion has been fully briefed and argued orally and is now ripe for disposition. For the reasons that follow, Defendant's Motion to Dismiss pursuant to Rule 12(b)(2) must be granted.

**I.**

The facts alleged in Plaintiff's Complaint are assumed to be true solely for the purpose of resolving Defendant's Motion to Dismiss.[2] Those facts may be summarized as follows.

- Plaintiff, an American citizen domiciled in Manassas, Virginia, is a Kurdish political activist. Plaintiff's husband previously served as an elected member of the Iraqi Parliament from 2018 to 2021.

- Defendant is the prime minister of Kurdistan, an autonomous region in Northern Iraq.

- Plaintiff alleges that Defendant, as a "green card" holder, is entitled to U.S. residency. Plaintiff also alleges that Defendant owns a large mansion in McLean, Virginia, which Defendant sometimes visits. But Plaintiff concedes, however, that Defendant is not domiciled in Virginia.

- Plaintiff and her husband have publicly criticized Defendant and his family, the Barzanis.

- Beginning in 2020, an American journalist named Zack Kopplin began reporting on the Barzani family. In July 2020, Kopplin quoted Plaintiff's husband in an article as questioning whether the Barzani family used secret shell companies to buy properties and conceal their wealth.

- In December 2021, Kopplin published an article titled "Cowboy Drugstore: Traces of a Kleptocrat from Iraq to Delaware to Miami." Kopplin's article states that the Barzanis used shell corporations and real estate investments to conceal their wealth. Kopplin's article also states that Kopplin believed Defendant owned commercial real estate in Miami worth $18.3 million that had been leased to a CVS store.

- On December 7, 2021, Plaintiff and her husband posted links on Twitter and Facebook to Kopplin's "Cowboy Drugstore" article and translated the article into Kurdish.

- On December 9, 2021, several news outlets in Kurdistan published a statement issued by the Office of the Prime Minister of the Kurdish Regional Government in response to

---

[2] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that a district court must accept as true the facts pled in a complaint when resolving a Rule 12(b)(6) motion to dismiss); *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) (similarly noting that a district court must accept as true the facts pled in a complaint when resolving a Rule 12(b)(2) motion to dismiss on the basis of motion papers).

Kopplin's "Cowboy Drugstore" article. Plaintiff quoted the Kurdish language version of the statement in her Complaint. According to Plaintiff, when the statement is translated into English, it states:

> The last several days, a number of websites and social media pages circulated a topic of an American person—the topic is about the KRG [Kurdish Regional Government] PM. The report is far from the truth and is unsubstantiated. . . . After we conducted our investigation, it became evident that the reporter has a relationship with the wife of a former Iraqi-Kurdish member of Parliament, who is an American citizen. He is known for his behavior against the people of Kurdistan; in the last election, the people of Kurdistan punished him by not reelecting him. He lost the election in disgrace.

- Plaintiff alleges that the word "relationship" in the statement is understood by native Kurdish speakers to mean "adulterous affair." Plaintiff also alleges that the statement references Plaintiff, even though the statement does not include her name.

- According to Plaintiff, Defendant caused the Office of the Prime Minister of the Kurdistan Regional Government to publish the statement in order to retaliate against Plaintiff for her efforts to expose the Barzanis' corruption. Plaintiff also alleges that the statement places Plaintiff in imminent danger because in Kurdish culture, accusations of infidelity of a married woman constitute a "direct call for the killing" of the woman.

- Since Defendant caused the publication of the statement, Plaintiff has received warnings that she is in danger and should stop criticizing the Barzani family.

- On several occasions in 2021 and 2022, a Kurdish-American woman who resides in Washington, D.C. (referred to in the Complaint as "Person #1") approached Plaintiff on behalf of Defendant to tell Plaintiff to retract her online postings about the Barzani family. Person #1 told Plaintiff that the Barzanis would compensate Plaintiff to stop posting criticisms of the family.

- On October 20, 2022, Person #1 met Plaintiff in Fairfax County, Virginia. During the meeting, the person told Plaintiff that the Barzanis will seek revenge against Plaintiff.

Compl., Dkt. 1 at 3–24. Plaintiff's Complaint alleges the following four counts: (i) assault by an "electronically transmitted communication" intended to incite religious extremists to harm Plaintiff; (ii) stalking by publication of an "electronically transmitted communication" intended to incite religious extremists; (iii) defamation; and (iv) intentional infliction of emotional distress. Compl. at ¶¶ 71–96.

3

Defendant, responding to the Complaint, has filed a Motion to Dismiss seeking dismissal of the Complaint in its entirety. Specifically, Defendant argues that the Complaint must be dismissed:

(i) pursuant to Rule 12(b)(2) for lack of personal jurisdiction;

(ii) pursuant to Rule 12(b)(1) because the FSIA forecloses the lawsuit;

(iii) pursuant to Rule 12(b)(7) because Plaintiff has failed to join the Kurdish Regional Government as a required party; and

(iv) pursuant to Rule 12(b)(6) because Plaintiff has failed to plead adequately a claim for defamation or any other tort under Virginia law.

For the reasons that follow, Defendant's Motion to Dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction must be granted. Given this result, it is unnecessary to address or resolve the other grounds for dismissal asserted by Defendant.

## II.

Defendant first argues that Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(2) because the facts alleged in the Complaint do not establish that personal jurisdiction exists over Defendant. In this respect, the Fourth Circuit has explained that where, as here, a defendant challenges a complaint for lack of personal jurisdiction by filing a Rule 12(b)(2) motion, "the jurisdictional question . . . is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). Where, as here, "the court addresses the question [of personal jurisdiction] on the basis only of motion papers," the plaintiff has the burden to "make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." *Id.* In considering a challenge to jurisdiction on such a record, "the court must construe all relevant pleading allegations in the light most favorable to

4

the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.*

The Federal Rules of Civil Procedure instruct district courts to look first to state law in order to determine if personal jurisdiction exists over a defendant. *See* Rule 4(k)(1)(A), Fed. R. Civ. P. If the long-arm statute of the state in which the district court sits authorizes the court to exercise jurisdiction, the district court must next determine whether the assertion of that jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 622–23 (4th Cir. 1997). In other words, personal jurisdiction analysis calls for a two-step inquiry. The first step is to determine whether Virginia's long-arm statute reaches the defendant; the second step requires "determin[ing] whether the long-arm's reach exceeds its constitutional grasp." *AESP, Inc. v. Signamax, LLC*, 29 F. Supp. 3d 683, 688 (E.D. Va. 2014).

### A.

Defendant's Motion to Dismiss must be granted at the outset because Virginia's long-arm statute does not reach Defendant's alleged conduct. Although Plaintiff argues that personal jurisdiction over Defendant exists pursuant to two provisions of the Virginia long-arm statute, neither of the provisions that Plaintiff cites permits exercising jurisdiction over Defendant. First, Plaintiff argues that the long-arm statute is satisfied because Defendant owns property in Virginia. This argument is mistaken because although Virginia's long-arm statute references property ownership as a basis for personal jurisdiction, it requires that the "cause of action *aris[e] from* the person's . . . possessing real property in this Commonwealth." Va. Code § 8.01-328.1(A)(6) (emphasis added). The Complaint nowhere alleges that Plaintiff's causes of action are linked to Defendant's possession of property in Virginia.

5

Second, Plaintiff argues that meetings between "Person #1" and Plaintiff in Northern Virginia create jurisdiction over Defendant because the unnamed person acted as Defendant's agent in conveying a message to Plaintiff. This argument plainly fails. To begin with, although the Virginia long-arm statute permits personal jurisdiction over a person "who acts . . . by an agent" to cause "tortious injury in this Commonwealth by an act or omission in this Commonwealth," the asserted cause of action must "aris[e] from" the person's "[c]ausing tortious injury . . . in this Commonwealth." Va. Code § 8.01-328.1(A)(3). Nowhere in the Complaint does Plaintiff allege that her four asserted causes of action arise from Defendant's alleged use of "Person #1" in Virginia as an agent to threaten Plaintiff. Instead, the Complaint makes clear that all four of Plaintiff's claims stem only from Defendant's online statement which was published in Kurdistan. *See* Compl. ¶¶ 72–96.

Finally, Defendant's conduct in Kurdistan is not encompassed by the provision of the Virginia long-arm statute which provides that personal jurisdiction exists if the defendant causes "tortious injury in this Commonwealth by an act or omission outside this Commonwealth" if the defendant "regularly does or solicits business, or engages in any other persistent course of conduct . . . in this Commonwealth." Va. Code § 8.01-328.1(A)(4). Plaintiff has not alleged in the Complaint any facts, as required by the long-arm statute, showing that Defendant has engaged in a "persistent course of conduct" in Virginia. *Id.* Although Plaintiff has alleged that Defendant owns property in Virginia and sometimes visits Virginia, Plaintiff has not alleged in her Complaint any visits to the United States by Defendant in any capacity at any time, nor has Plaintiff alleged anywhere in the Complaint that Defendant has ever conducted any business in Virginia. Thus, Plaintiff has failed to allege any "persistent course of conduct" by Defendant as required by Virginia Code § 8.01-328.1(A)(4), and Plaintiff's Complaint must be dismissed at

the outset because Virginia's long-arm statute does not permit exercising personal jurisdiction over Defendant. Put differently, the Virginia long-arm statute, by its terms, does not reach Defendant's alleged conduct.

**B.**

Even if Virginia's long-arm statute were sufficient to reach Defendant's conduct here, exercising jurisdiction over Defendant would be improper because the long-arm statute's reach in this situation would "exceed[] its constitutional grasp." *Signamax*, 29 F. Supp. 3d at 688. In this respect, the Constitution permits a court to exercise personal jurisdiction over a defendant if the defendant has certain "minimum contacts" with the forum such that the suit does not offend "traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). As the Supreme Court and the Fourth Circuit have explained in conducting the constitutional analysis, there are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *See, e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923–24 (2011); *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003). If the requirements for either general or specific jurisdiction are satisfied, the court may constitutionally exercise its jurisdiction over the defendant. Each is considered in turn below.

**1.**

General jurisdiction exists where the defendant's activities are "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear*, 564 U.S. at 919 (quoting *Int'l Shoe*, 326 U.S. at 317). For an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* at 924. Here, general jurisdiction over Defendant does not exist because as Plaintiff herself concedes, Defendant is not domiciled

7

in Virginia. Although Plaintiff has alleged that Defendant is a "green card" holder and owns a home in McLean, Virginia, Plaintiff stated in her Complaint that "Defendant is not a citizen of, *or domiciled in*, Virginia." Compl. at ¶ 6 (emphasis added). Nowhere in the Complaint does Plaintiff allege that Defendant resides in Virginia. Instead, Plaintiff has only alleged that Defendant "visits [his property in McLean] when he is in the United States." Compl. at ¶ 10. This allegation does not suffice for general jurisdiction. Similarly, the Complaint is devoid of any facts establishing that Defendant performed "continuous and systematic" activities in Virginia as required by Supreme Court authority for general jurisdiction. *Goodyear*, 564 U.S. at 919. Thus, because Plaintiff has not pled facts showing that Defendant is at home in Virginia, Plaintiff has failed to make a *prima facie* showing that general jurisdiction exists over Defendant.[3]

**2.**

Given that general jurisdiction does not exist over Defendant, it is necessary to consider whether specific jurisdiction exists over Defendant. Specific jurisdiction is at issue where the defendant's contacts with the forum state "form the basis for the suit." *Carefirst*, 334 F.3d at 397; *see also Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 582 U.S. 255, 264 (2017) ("In order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an

---

[3] Importantly, even if Defendant *did* reside in Virginia as a lawful permanent resident or "green card" holder, dismissal would still be required because in that event, there would be no diversity jurisdiction as both Plaintiff and Defendant would be domiciled in Virginia. *See* 28 U.S.C. § 1332(a)(2) ("[D]istrict courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same state."). Simply put, Plaintiff cannot have it both ways: she cannot argue that Defendant resides in Virginia for purposes of establishing general personal jurisdiction while simultaneously conceding that Defendant is *not* domiciled in Virginia in order to satisfy the requirement of diversity jurisdiction.

occurrence that takes place in the forum State."). The Fourth Circuit has established a "three-prong" test for specific jurisdiction:

> (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.

*UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020) (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)). These three requirements are analyzed below.

The first prong of the Fourth Circuit's test for specific personal jurisdiction concerns "whether and to what extent 'the defendant purposefully avail[ed] himself of the privilege of conducting business under the laws of the forum state.'" *Id.* at 352 (quoting *Consulting Eng'rs Corp.*, 561 F.3d at 278). Importantly, the Fourth Circuit has altered the traditional purposeful availment analysis "[i]n the context of online activities and websites" in order to account for technological advances that have facilitated the exchange of products and ideas on the internet. *Id.* In *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002), the Fourth Circuit announced the following test for specific personal jurisdiction in the internet context:

> a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

*Id.* at 714. Under this standard, the "touchstone" for personal jurisdiction "remains that an out-of-state person have engaged in some activity *purposefully directed* toward the forum state," thereby creating a "substantial connection with the forum state." *UMG Recordings*, 963 F.3d at 353 (quoting *ESAB Grp.*, 126 F.3d at 625). In this respect, "a person who simply places

9

information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received." *ALS Scan, Inc.*, 293 F.3d at 714. Otherwise, the "defense of personal jurisdiction, in the sense that a State has geographically limited judicial power, would no longer exist," because anyone who posted information on the internet would be subject to personal jurisdiction in every state. *Id.* at 712.

The Fourth Circuit has also explained that where, as here, the internet activity at issue is "the posting of articles on a website, the *ALS Scan* test works more smoothly when parts one and two of the test are considered together." *Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002). Thus, in those circumstances, a court must consider "whether the [defendant] manifested an intent to direct their website content . . . to a Virginia audience." *Id.* And in this regard, "[s]omething more than posting and accessibility is needed" in order to fulfill this requirement and indicate that the defendant has "purposefully (albeit electronically) directed [his] activity in a substantial way to the forum state." *Id.* (quoting *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998)).

Given this principle, particularly instructive here is the Fourth Circuit's analysis and holding in *Young*. There, the Fourth Circuit held that Connecticut newspapers were not subject to personal jurisdiction in Virginia simply from posting online news articles that allegedly defamed the warden of a Virginia prison. The Fourth Circuit in *Young* explained that personal jurisdiction "in the Internet context requires proof that the out-of-state defendant's Internet activity is expressly targeted at or directed at the forum state." *Young*, 315 F.3d at 262–63. And to make this determination, the Fourth Circuit looked to the "general thrust and content" of the website and the "specific articles at issue," and concluded that because the "overall content" of the websites was "decidedly local," the newspapers did not "manifest an intent to target and focus on

10

Virginia readers." *Id.* at 263. Thus, the Virginia court could not exercise personal jurisdiction over the Connecticut newspaper defendants even though the subject of the newspapers' allegedly defamatory articles was a Virginia resident, and even though the plaintiff alleged that the newspapers published the articles with the understanding that the articles would "expose [the plaintiff] to public hatred, contempt, and ridicule in Virginia, where he lived and worked." *Id.* at 262.

This case is materially indistinguishable from *Young* and requires the same result—no personal jurisdiction exists in Virginia simply by the act of publishing, outside of Virginia, an allegedly defamatory statement on the internet. Here, Defendant issued a statement in Kurdish which Plaintiff alleges was published on several Kurdish news outlet websites. *See* Compl. at ¶ 55. But as in *Young*, nothing in the Complaint indicates that Defendant "manifest[ed] an intent to aim" the online statement "at a Virginia audience." *Young*, 315 F.3d at 263. The content of the statement is directed at the article written by Zack Kopplin, which Plaintiff does not allege was published by a Virginia news outlet or written by a Virginia resident, and the statement does not even name Plaintiff or any other Virginia resident. And importantly, Plaintiff admits in her Complaint that the statement at issue was published online for a "worldwide audience," *not* at a Virginia audience. Compl. at ¶ 58. Thus, even accepting Plaintiff's allegations in the Complaint as true, Plaintiff has failed to make a *prima facie* showing that Defendant aimed the statement at a Virginia audience as required for purposeful availment in the internet context. Instead, Defendant here, as the defendants in *Young*, has "simply posted information on an Internet Website which is accessible to users in foreign jurisdictions," an activity the Fourth Circuit has held is not sufficient to establish the requisite "purposeful conduct" necessary to confer specific personal jurisdiction on a defendant. *ALS Scan*, 293 F.3d at 713–14 (quoting *Zippo Mfg., Co. v.*

*Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). To conclude otherwise would mean that the mere posting of a statement on a website to a worldwide audience could subject a defendant to personal jurisdiction in any state where the website was accessed. In that event, as several courts have correctly recognized, "notions of limited State sovereignty and personal jurisdiction would be eviscerated." *Id.* at 713; *see also Young*, 315 F.3d at 263 ("[A] person's act of placing information on the Internet is not sufficient by itself to subject that person to personal jurisdiction in each State in which the information is accessed . . . Otherwise, . . . the traditional due process principles governing a State's jurisdiction over persons outside of its borders would be subverted.").

The next prong in the Fourth Circuit's specific jurisdiction analysis is whether Plaintiff's claims "arise out of forum-related activities." *UMG Recordings*, 963 F.3d at 352. Of course, where activity in the forum state is "the genesis of [the] dispute," this prong is "easily satisfied." *Id.* (quoting *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 303 (4th Cir. 2012)). But that is not the case here; instead, Plaintiff's claims arose from activities in Kurdistan far outside the borders of Virginia. Thus, Plaintiff's claims in the Complaint clearly do not arise out of any forum-related activities, and hence there is no specific personal jurisdiction.

Nor does the Complaint allege any other facts demonstrating that Plaintiff's claims arise out of forum-related activities. Although Plaintiff alleges that an unnamed person referred to as "Person #1" threatened Plaintiff in Virginia, the Complaint makes clear that all four of Plaintiff's claims stem *only* from Defendant's online statement—which the Complaint alleges was published in Kurdistan—rather than the alleged threats from "Person #1" in Virginia. For example, Plaintiff's assault claim in Count I alleges that Defendant "assaulted [Plaintiff] by

12

publishing and causing the publication and communication of an *electronically transmitted threat*," and does not reference the alleged threat by "Person #1" as a basis for the assault claim. Compl. at ¶ 72 (emphasis added).[4] And none of Defendant's alleged actions related to the online statement occurred in Virginia or were directed at Virginia. Thus, the Fourth Circuit's second requirement for personal jurisdiction is not satisfied here, providing yet another reason warranting dismissal of Plaintiff's Complaint for lack of personal jurisdiction.

The final prong—whether the exercise of personal jurisdiction is constitutionally reasonable—ensures that "litigation is not 'so gravely difficult and inconvenient' as to place the defendant at a 'severe disadvantage in comparison to his opponent.'" *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 296 (4th Cir. 2009) (quoting *Christian Science Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001)). Factors to consider in assessing reasonableness are "[t]he burden on the defendant, interests of the forum state, and the plaintiff's interest in obtaining relief." *Tire Eng'g*, 682 F.3d at 303.

It would not be constitutionally reasonable to exercise personal jurisdiction over Defendant here. First, the interests of the forum state in resolving this dispute are minimal. To be sure, the Fourth Circuit has held that Virginia has a "valid interest in the resolution of the grievances of its citizens . . . particularly when they potentially involve issues of Virginia law." *CFA Inst.*, 551 F.3d at 297. But this is not true in this case; rather, this case presents an attempt to have a Virginia court adjudicate a political dispute between dueling foreign political adversaries. Because the online statement triggering the suit was published on Kurdish news outlets to a worldwide audience, Virginia as the forum state has little interest in adjudicating this

---

[4] Similarly, Plaintiff's stalking claim in Count II, defamation claim in Count III, and intentional infliction of emotional distress claim in Count IV relate only to Defendant's publication of the online statement and do not reference any threats by "Person #1." *See* Compl. at ¶¶ 80–96.

13

dispute. Moreover, the "burden on the defendant" weighs against exercising personal jurisdiction. *Tire Eng'g*, 682 F.3d at 303. As the Supreme Court has explained, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Ca., Solano Cty.*, 480 U.S. 102, 114 (1987). Here, it would be unreasonable to hale the prime minister of the Kurdish Regional Government into Virginia for a lawsuit involving a statement originally issued by the Office of the Prime Minister of the Kurdish Regional Government in Kurdistan, in the Kurdish language, on Kurdish news outlets. Thus, Plaintiff has failed to make a *prima facie* showing that any of the Fourth Circuit's three prongs required for exercising specific jurisdiction is satisfied and Defendant's Motion to Dismiss pursuant to Rule 12(b)(2) must be granted.

   Finally, it is also worth noting that the fact that Plaintiff suffered the brunt of her alleged harm in Virginia cannot establish personal jurisdiction over Defendant in Virginia. In this respect, the Supreme Court has clearly held that "mere injury to a forum resident is not a sufficient connection to the forum" for personal jurisdiction. *Walden*, 571 U.S. at 290. Instead, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* For this reason, the Supreme Court explained that it is impermissible to "allow[] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis," and that courts may not "attribute[] a plaintiff's forum connections to the defendant and make[] those connections 'decisive' in the jurisdictional analysis." *Id.* (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)). Here, Defendant has no meaningful connection to Virginia related to this dispute other than the fact that Defendant allegedly posted a statement on Kurdish websites that Plaintiff

14

accessed in Virginia. This minimal online activity, which was not directed at a Virginia audience, is simply not enough to confer personal jurisdiction over this foreign defendant. Thus, Plaintiff's arguments must be rejected, and Plaintiff's Complaint must be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2).

### III.

Defendant also argues in the alternative that Plaintiff's Complaint must be dismissed (i) pursuant to Rule 12(b)(1) because the FSIA bars this lawsuit; (ii) pursuant to Rule 12(b)(7) because Plaintiff has failed to join the Kurdish Regional Government as a required party; and (iii) pursuant to Rule 12(b)(6) because Plaintiff has failed to plead adequately a claim for defamation or any other tort under Virginia law. Given the result reached here that dismissal is required under Rule 12(b)(2) for lack of personal jurisdiction, it is unnecessary to reach or decide Defendant's alternative arguments for dismissal. Because personal jurisdiction over Defendant does not exist, Plaintiff's Complaint must be dismissed without prejudice to the merits of Plaintiff's claim. If the parties wish to continue to litigate their dispute, they must do so in a more appropriate forum.

An appropriate Order will issue.

The Clerk of the Court is directed to provide a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
May 24, 2023

/s/
T. S. Ellis, III
United States District Judge